**Robert W. MONDAY, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant and Third-Party Plaintiff-Appellant,**

v.

**John A. MONDAY, Third-Party Defendant-Appellee.**

**No. 17567.**

United States Court of Appeals Seventh Circuit.

Jan. 29, 1970.

Rehearings Denied March 17, 1970.

Johnnie M. Walters, Asst. Atty. Gen., Daniel B. Rosenbaum, Lee A. Jackson, William A. Friedlander, Attys., Tax Division, Dept. of Justice, Washington, D. C., Robert J. Lerner, U. S. Atty., Milwaukee, Wis., for appellant.

Martin J. Torphy, E. Campion Kersten, Francis J. Demet, Milwaukee, Wis., for appellee.

Before KNOCH, Senior Circuit Judge, CUMMINGS, Circuit Judge, and STECKLER, District Judge.[1]

CUMMINGS, Circuit Judge.

This case involves the question whether Robert and John Monday are personally liable for the P. C. Monday Tea Company's (the "Company") failure to pay to the Government social security and income taxes withheld from its employees.

The Company was organized in 1918 and sold groceries to housewives through door-to-door truck route salesmen. During the latter half of 1958 and thereafter, Robert Monday was president and John Monday was vice president and secretary of the Company, which had 55 employees. John Monday signed and participated in the preparation of the Company's tax returns.

In 1956, the financial condition of the Company began to deteriorate. By 1960, its annual gross income was half the average of the previous five years. It could acquire merchandise for resale from its suppliers only on a C.O.D. basis. During the third and fourth quarters of 1960, the Company paid wages to its officers and employees and deducted federal income and social security taxes from the wages. It failed, however, to pay the Government the withheld taxes of $6,619.53 on October 31, 1960, and $5,764.48 on January 31, 1961, the respective due dates for the quarterly payments. In November or December 1960, it belatedly filed its return for withheld taxes for the third quarter of 1960, and it also failed to file its return for the fourth quarter of 1960 until March 1961. Nevertheless, during those quarters, the Company continued to pay business creditors for antecedent debts and for merchandise purchased C.O.D.

In March 1961, Robert Monday borrowed $4,500 from his sister in response to the Internal Revenue Service's March 1961 demand for payment of withheld social security and income tax moneys of the Company's employees. John Monday testified that this sum was to cover the withheld taxes for the first quarter of 1961, but Robert Monday testified he thought the payment of $4,500 satisfied all withholding arrearages and made the Company current. In fact, after the $4,500 payment the Company was still delinquent as to the last two quarters of 1960.

In May 1961, the Company went into receivership, and it was adjudicated bankrupt in July 1961. In the bankruptcy proceedings, the Government filed claims for various classes of taxes for 1960 and 1961, including the amounts here in issue. These claims were allowed in the sum of $22,494.53, and in September 1963, the Government realized $10,978.25 on them. Although the bankruptcy referee directed that this amount be applied to the most recent claims of the Government, the Government applied $3,167.57 to the Company's withholding liability for the second quarter of 1960 and only applied $435.84 to the third quarter of 1960, thus leaving unsatisfied most of the Government's claim for the third and fourth quarters 1960 withholding taxes. The bankruptcy referee also assigned to the Government $7,400 of the Company's accounts receivable, but the trial did not disclose whether any of these were collected by the Government.

In March 1964, the Internal Revenue Service assessed a 100% penalty in the amount of $12,384.01[2] against Robert Monday pursuant to Section 6672 of the Internal Revenue Code of 1954.[3] This

---

1. William E. Steckler, Chief Judge of the United States District Court, Southern District of Indiana, is sitting by designation.

2. In January 1965, this assessment was abated in the amount of $435.84 received from a bankruptcy distribution and applied to the third quarter of 1960.

3. Section 6672 (26 U.S.C. § 6672) provides:

 "Any person required to collect, truthfully account for, and pay over

assessment was based on the Company's failure to pay to the Government the federal income and social security taxes withheld from the wages of its employees during the third and fourth quarters of 1960. In March 1966, Robert Monday paid $1,112 of this assessment under protest. In May 1966, he filed this suit in the district court seeking to recover that amount plus interest and seeking a declaration that the penalty assessment against him was null and void. The Government counterclaimed for $10,836.17, the balance of the assessment, plus interest. The Government also filed a third-party complaint against John Monday seeking to recover $11,948.17, plus interest, pursuant to a November 1964 assessment against him under Section 6672 of the Internal Revenue Code.

At the close of the trial, the jury found that Robert and John Monday were under a duty to collect and pay the withheld taxes to the Government for the two quarters in question, pursuant to Sections 6671(b) and 6672 of the Internal Revenue Code of 1954, but that they did not willfully fail to pay the taxes. Therefore, judgment was entered for the Mondays. The district court subsequently denied the Government's motion for judgment notwithstanding the verdict or for a new trial (294 F. Supp. 1384) and this appeal followed.

*Sufficiency of Evidence to Support Jury's Finding that Robert Monday Had a Duty to Collect and Pay These Taxes to the Government*

■ Under Section 7501 of the Internal Revenue Code, the amount of the withheld income and social security taxes deducted from the Company's employees' wages in the third and fourth quarters of 1960 was "to be a special

fund in trust for the United States." See In the Matter of Halo Metal Products, Inc. [United States v. Randall], 419 F.2d 1068 (7th Cir.1969). The "person" liable for withheld taxes under Section 6672 of the Code includes an "officer or employee of a corporation, * * * who as such officer, * * * is under a duty" to see that the funds are remitted to the Government. 26 U. S.C. § 6671(b). The jury specially found that both Robert and John Monday had a duty to collect and pay the Government taxes deducted in the third and fourth quarters of 1960. Robert Monday contends that as to him, this finding cannot be sustained. Our examination of the record reveals sufficient support for the special verdict.

■ Corporate office does not, *per se,* impose the duty to collect, account for and pay over the withheld taxes. On the other hand, an officer may have such a duty even though he is not the disbursing officer. Cf. Bloom v. United States, 272 F.2d 215 (9th Cir.1959), certiorari denied, 363 U.S. 803, 80´ S.Ct. 1236, 4 L.Ed.2d 1146. The existence of the same duty and concomitant liability in another official likewise has no effect on the taxpayer's responsibility. Datlof v. United States, 252 F.Supp. 11, 33 (E. D.Pa.1966), affirmed, 370 F.2d 655 (3d Cir.1966), certiorari denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624. Liability attaches to those with power and responsibility within the corporate structure for seeing that the taxes withheld from various sources are remitted to the Government. Scott v. United States, 354 F.2d 292, 296, 173 Ct.Cl. 650 (1965); see also Gefen v. United States, 400 F.2d 476, 482 (5th Cir.1968), certiorari denied, 393 U.S. 1119, 89 S.Ct. 990, 22 L.Ed.2d 123. This duty is generally found in high corporate officials

any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law,

be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."

charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds. Cf., e. g., Bloom v. United States, 272 F.2d 215 (9th Cir.1959), certiorari denied, 363 U. S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146; Hewitt v. United States, 377 F.2d 921, 924 (5th Cir.1967); Scott v. United States, 354 F.2d 292, 173 Ct.Cl. 650 (1965); Newsome v. United States, 301 F.Supp. 757 (S.D.Texas 1968); see generally, 8A Mertens, Law of Federal Income Taxation, § 47A.25a, pp. 126–128 (1964).

■ Under the corporate by-laws, Robert Monday's duties as president included "general supervision of the affairs of the corporation." Through his own stock ownership and through a voting trust, he controlled the Company. He and his brother signed most of the corporate checks, and both of them conferred from time to time as to what creditors should be paid. They sought payment from Robert, not John. Robert Monday had signed corporate checks payable to the Government with respect to prior withholding taxes. In John's absence, Robert performed John's duties. Robert also admitted having read a report prepared by the Company's certified public accountant informing him of the then overdue taxes. Regardless of the purchasing and promotional activities of Robert, there was ample evidence to sustain the jury's conclusion on this point. Cf. Kelly v. Lethert, 362 F.2d 629, 634 (8th Cir.1966).

*Correctness of Willfulness Instruction*

Over the objection of the Government, the district court gave the following instruction as to the meaning of the word "willful" in Section 6672 (note 3 *supra*):

"You are instructed that for the plaintiff's and/or third-party defend-ant's failure to pay over the taxes withheld to have been willful it is not necessary that there have been present any intent to defraud or to deprive the United States of taxes, nor is it necessary that bad motives or wicked design be shown.

"The term 'willful' means a voluntary, conscious and intentional act, done *without reasonable cause*, to prefer other creditors of the corporation over the government.

"Mere negligence, that is, failure to exercise ordinary care, in respect to collecting, truthfully accounting for or paying over the taxes is not enough to establish willfulness.

"A 'willful' act may also be described as one done intentionally, knowingly, and purposely, *without justifiable excuse*, as distinguished from an act done carelessly, thoughtlessly, heedlessly, or inadvertently.

"A 'willful' act differs essentially from a 'negligent' act. The former, that is 'willful,' is positive; and the latter, that is 'negligence,' is negative." (Emphasis supplied.)

The Government asserts that it was improper for the district court to permit the jury to excuse acts done with "reasonable cause" or "justifiable excuse." We agree that it was improper to include these terms in the instruction.[4]

■ The precise content to be given the concept of "willfulness" varies according to the legal context in which it appears. In criminal statutes, "willfulness" generally requires bad purpose or the absence of any justifiable excuse. United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381. In civil actions, however, these elements need not be present. Rather, willful conduct denotes intentional, knowing and voluntary acts. It may also indicate a reckless disregard for obvious or known risks.

---

4. In addition, the Government argued that even if some "reasonable cause" instruction were proper, the district court erroneously failed to explain its meaning

and thereby permitted the jury to conclude that the financial straits of the corporation constituted such a reasonable cause.

 Despite its denomination as a "penalty" assessment, the statutory liability imposed by Section 6672 is essentially civil in nature. Cash v. Campbell, 346 F.2d 670, 673 (5th Cir.1965). Its basic purpose is the protection of governmental revenue. Botta v. Scanlon, 314 F.2d 392, 393 (2d Cir.1963); Spivak v. United States, 370 F.2d 612, 616 (2d Cir.1967), certiorari denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625. It provides a remedy to prevent the unnecessary loss of tax funds by permitting the "taxing authority to reach those responsible for the corporation's failure to pay the taxes which are owing." United States v. Graham, 309 F.2d 210, 212 (9th Cir.1962); White v. United States, 372 F.2d 513, 516, 178 Ct.Cl. 765 (1967). In light of this purpose, we agree with those courts which have defined willful action under Section 6672 as referring to voluntary, conscious and intentional —as opposed to accidental—decisions not to remit funds properly withheld to the Government. Spivak v. United States, 370 F.2d 612, 615 (2d Cir.1967), certiorari denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625; Cross v. United States, 311 F.2d 90, 94 (4th Cir.1962); Hewitt v. United States, 377 F.2d 921, 924, 22 A.L.R.3d 1 (5th Cir.1967); Flan v. United States, 326 F.2d 356, 358 (7th Cir.1964); Bloom v. United States, 272 F.2d 215, 223 (9th Cir.1959), certiorari denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146; Scott v. United States, 354 F.2d 292, 295, 173 Ct.Cl. 650 (1965). Liability does not depend upon the presence of bad motive or the specific intent to defraud the Government or deprive it of revenue. White v. United States, 372 F.2d 513, 521, 178 Ct.Cl. 765 (1967).

 The standard of willfulness should not be construed to include lack of "reasonable cause" or "justifiable excuse." These concepts tend to evoke notions of evil motive or bad purpose which properly play no part in the civil definition of willfulness. Cf. Bloom v. United States, 272 F.2d 215, 223–224 (9th Cir.1959), certiorari denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146;

accord, Flan v. United States, 326 F.2d 356, 358 (7th Cir.1964); White v. United States, 372 F.2d 513, 178 Ct.Cl. 765 (1967). In addition, "reasonable cause" and "justifiable excuse" invite consideration of such misleading and improper factors as the financial condition of the business or the demands of creditors. Cf. United States v. Hill, 368 F.2d 617, 621 (5th Cir.1966); United States v. Strebler, 313 F.2d 402, 404 (8th Cir. 1963); Frazier v. United States, 304 F. 2d 528, 529–530 (5th Cir.1962). The defenses countenanced by the district court's use of "reasonable cause" and "justifiable excuse" are inconsistent with the purposes of Congress to protect the sources of revenue by permitting recovery from those individuals charged with the responsibility of transferring withheld funds to the Government.

 We therefore hold that the instruction on "reasonable cause" and "justifiable excuse" was an impermissible addition to the jury's instructions. The district court should have adopted the following part of the Government's proferred instruction on willfulness:

"You are instructed that for the plaintiff's and/or third-party defendant's failure to pay over the taxes withheld to have been willful it is not necessary that there have been present any intent to defraud or to deprive the United States of taxes; nor is it necessary that bad motives or wicked design be shown.

"An act is willful if it is voluntary, conscious, and intentional. If you find that plaintiff and/or third-party defendant knowingly used available funds to prefer other creditors over the United States then you must find that he acted willfully."

Despite the erroneous instruction given, we must still consider whether there is sufficient evidence against John and Robert Monday to require a directed verdict in favor of the Government against either brother rather than a new trial.

### Evidence of John Monday's Willfulness

 John Monday was the vice president and secretary and a director of the Company. It is uncontested that he was in charge of corporate tax matters. Before their due dates, he and the Company's bookkeeper prepared the quarterly returns in issue, and John Monday signed them as vice president. Each was filed belatedly and without payment although appropriate checks had evidently been prepared. In his testimony, he stated that during the third and fourth quarters of 1960, he knew these withholding taxes were due and owing and nevertheless wrote checks to other creditors and suppliers of the corporation instead of paying the United States out of otherwise available funds. This preference of others over the Government was clearly an intentional act requiring a verdict in favor of the Government against John Monday since a contrary verdict could never stand.

### Evidence of Robert Monday's Willfulness

 Deane Nichol, the certified public accountant employed by the Company in the fall of 1960, testified that he pointed out to Robert in November 1960 that the Company had not paid taxes withheld from its employees and told him of the possible penalties. Robert admitted that he read Deane Nichol's report which reflected the delinquent taxes. Robert conferred with his brother John as to what creditors should be paid and signed checks covering previous trust tax payments to the Government. Robert knew the Company withheld taxes and was supposed to forward them to the Government. He performed John's functions when John was absent. Since John admitted the $4,500 March 1961 payment was only for the first quarter of 1961, the jury could disbelieve Robert's statement that he thought it covered the delinquent quarters as well. On the other hand, Robert testified that he did not know of the tax arrearage until March 1961. Because of conflicts in the evidence, there must be a remand with respect to Robert, so that a properly instructed jury can resolve the question of his willfulness.

### Meetings with the Internal Revenue Service

 The chief defense presented by the Monday brothers revolves around their meetings with Edward Pietrzak, collection department supervisor of the Internal Revenue Service in Milwaukee, Wisconsin. The court below felt that the content of these meetings was relevant to the determination of willfulness. In addition, plaintiff Robert W. Monday contends that as a result of these meetings, the government is estopped to seek recovery from the Company's officers under Section 6672. We disagree with both propositions.

The evidence of the meetings was directed to the establishment of a "reasonable cause" or "justifiable excuse" for the parties' failure to perform their duties with respect to the withholding taxes.[5] It was intended to negate any inference of bad faith or improper motivation by establishing reasonable reliance upon the representation that the moneys need not be collected and remitted. Since, as seen, the Mondays are foreclosed from relying upon "reasonable cause" or "justifiable excuse" as an element of willfulness under this Section, they may find no solace in the meetings in this respect.

Nor does the testimony of the content of the meetings support any claim that the Government should be estopped because of the statements made by Pietrzak. The first meeting of the Government's agent and the Company's representatives took place on November 30, 1960. Since this meeting occurred one month after the due date for the third quarter taxes, it furnished no excuse for the previous failure to collect and remit

---

5. This purpose is clear from the discussion of the matter in the district court's opinion. 294 F.Supp. at 1387, 1389.

the funds. Neither at that time nor at the subsequent meeting in March 1961, did Pietrzak give the Company or its individual officers any indication that they were relieved of their responsibilities under the various Sections of the Code. At the November meeting, moreover, Pietrzak specifically instructed the Company to keep current, thus precluding any claim that its subsequent failure to remit the fourth quarter taxes resulted from reliance upon his authorization of continued business. In any event, the corporate and individual liabilities under Section 6672 are separate and distinct. Cf. Datlof v. United States, 370 F.2d 655, 656 (3d Cir.1966), certiorari denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L. Ed.2d 624. The taxpayers have failed to disclose any action by the Government upon which they could reasonably have relied as the grounds for their failure to collect and remit any of the taxes withheld from their employees. Cf. Spivak v. United States, 370 F.2d 612, 615 (2d Cir.1967), certiorari denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625.[6]

*Bankruptcy Proceedings*

 Finally, the Mondays argue that the assessments against them are improper because the Internal Revenue Service did not apply the $10,978.24 bankruptcy proceeds to the Government's most recent tax claims, as directed by the bankruptcy referee. As the testimony shows, the Internal Revenue Service deliberately ignored the bankruptcy referee's direction and applied these proceeds to earlier periods for the "best benefit of the government," thus preserving the claims against Robert and John Monday individually for the quarters in question under Section 6672.

As previously noted, the personal liability imposed upon the individual taxpayer by Section 6672 is separate and distinct from that imposed upon the employer under Section 3403 of the Code. Datlof v. United States, 370 F.2d 655, 656 (3d Cir.1966), certiorari denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624. It is not dependent upon rules governing the liability of the employer. Cf. Rosenberg v. United States, 327 F.2d 362 (2d Cir.1964); Kelly v. Lethert, 362 F.2d 629 (8th Cir.1966). In Spivak v. United States, 370 F.2d 612 (2d Cir.1967), certiorari denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625, the court rejected a similar contention that the government's compromise of its claim for taxes against a bankrupt corporation which expressly provided that the government would assert no further claim against the corporation for withholding taxes, should bar the subsequent recovery from responsible officers under Section 6672.[7] Here too, the separate nature of the tax liabilities imposed upon the Mondays precludes their assertion of any satisfaction of the Company's liability for withholding taxes as a satisfaction of their individual liability under Section 6672.[8]

---

6. Because Pietrzak did not forgive the delinquent taxes and insisted that the Company henceforth keep current, there is no need to enter the troubled arena of when the doctrine of estoppel is applicable to the Government. See 2 Davis, Administrative Law Treatise §§ 17.01–17.04 (1958); 10 Mertens, Law of Federal Income Taxation §§ 60.14, 60.15 (1964).

7. In *Spivak* the compromise of the bankrupt corporation's debt specifically provided that it should not prejudice further proceedings against corporate officers for penalties such as that created by Section 6672. While the referee's order in this case cannot satisfy or remove the officers' liability, it might nevertheless bar action against the Mondays were they to show that an administrative practice existed, such as referred to in *Spivak*, that the Government would not press its claim against the responsible officers where the corporate obligation has been met. Cf. 370 F.2d at 615. Since the parties have not argued this question and there is no evidence at this time of any such administrative practice, we do not express any opinion on this point.

8. For this reason, absent any showing of an administrative practice mentioned in note 7, *supra*, the district court need not consider the question of the propriety of

For the foregoing reasons, the judgment of the district court is reversed with instructions to enter judgment for the United States against John A. Monday and to grant a new trial to Robert Monday to determine, upon proper instructions to the jury, the question of his willfulness.

Reversed and remanded.

the Commissioner's computations of the amount of taxpayers' liability insofar as the Government may have collected any of the $7,400 of accounts receivable assigned to the Government by the bankruptcy referee.