Steven J. SHEAR, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. A. No. 77–1118–A.

United States District Court,
D. Massachusetts.

Nov. 23, 1981.

Kennard I. Mandell, Boston, Mass., for plaintiff.

Reba A. Raffaelli, Tax Div., Dept. of Justice, Washington, D. C., and Donald R. Anderson, Asst. U. S. Atty., Boston, Mass., for defendant.

## MEMORANDUM OF FINDINGS AND ORDER

BAILEY ALDRICH, Senior Circuit Judge.*

Plaintiff, Steven J. Shear, in January 1972 purchased the stock of Paint-A-Car, International, a Delaware corporation engaged in doing inexpensive repairing and repainting of automobiles. He took control of the management of the business, and, until it ceased operations in November 1972, was in charge of its day-to-day operations. By January 31, 1972 the corporation owed withholding and Federal Insurance Contribution Act (FICA) taxes for the third and fourth quarters of 1971 of some $8,400. Plaintiff, unfortunately, was unaware of this fact until sometime in June when he received a visit from a Mr. Henry Simmons, an Internal Revenue officer delegated to collect this arrearage. At this time the corporation also owed $2,761 for the first quarter of 1972, a matter with which Simmons was not concerned. He stated to plaintiff that if the 1971 taxes were not paid forthwith the IRS would tie up the bank account and close down the corporation's business. Plaintiff stated that he would rather pay the 1972 taxes, but Simmons was not agreeable to this, and persisted that the 1971 taxes must be paid first. In order to avoid the closing down of his business, plaintiff gave Simmons a company check payable to the IRS in the amount of $2,000 on June 13, and another in the amount of $200 on June 22. There are notations on the first of these checks indicating that it was for the 1971 third quarter. In an affidavit filed with the government in February 1976 plaintiff stated that Simmons made this notation at the time of receipt. Simmons denies doing it. I need not resolve the conflict, for, in any event, plaintiff was clearly told before he delivered it that this was the proceeds' destination. On the second check plaintiff, in his own handwriting, noted that the check was for "Back taxes".

As a result of this, Simmons took no further action, but on August 3 he returned, and another, similar interview took place. On this occasion corporate funds were lacking and plaintiff gave Simmons his personal check, in the amount of $5,777.75. On the top of the check was written the corporation's name and tax identification number, and, elsewhere, in plaintiff's handwriting, it was recited, "Re: taxes thru 12–31–71".

The IRS applied the proceeds of all three checks to satisfy the corporation's 1971 arrears. Plaintiff now maintains that they should have been applied to the 1972 taxes. Although the 1972 taxes have also been paid, the difference would be vital. For present purposes it will be assumed, in plaintiff's favor, that because of the corporation's parlous condition when he took over, he, personally, would not have had to pay the 1971 FICA arrears, cf. Slodov v. United States, 1978, 436 U.S. 238, 239, 98 S.Ct. 1778, 1781, 56 L.Ed.2d 251. Because of his position as a "responsible" party in 1972, however, plaintiff was personally responsible for 1972, Int.Rev.Code of 1954 §§ 6671 & 6672, if called on,[1] and, in fact,

---

* Sitting by designation.

1. Plaintiff made the mistake of paying workers and other creditors instead of the company's

did personally pay part of the 1972 assessments. If the June and August checks had been credited to 1972, it would have lessened this personal obligation, and plaintiff would be entitled to the pro tanto recovery he seeks.

It is plaintiff's position that he "did not intend" the proceeds of the June and August checks to be applied to 1971, and that he issued them for that purpose under duress.

Although what is intent sometimes leads to extended discussions, normally one is to be regarded as intending to do whatever, short of actual physical compulsion, one knowingly does. The legal consequences may vary, depending upon the extended circumstances. The holdup victim who hands over his watch, and the father who gives a watch to his graduating son, both have the same intent—to make the physical transfer.[2] The only difference is the societal one; how the law treats the intent. In law the holdup victim does not lose ownership on title; the father does. A pistol is unlawful duress; family importuning is not. No matter how much the father might have disliked making the gift, he made a voluntary choice.

 In the present case plaintiff's only possible claim relates to the August personal check.[3] Even though he, personally, may not have owed the 1971 taxes, he knew his check was to be applied thereto. Consequently, whatever he may seek to testify was his intent, he manifested that he intended that result. Hence he must be held to it unless, like the hold-up victim, he had been caused to express that intent as a result of illegal duress.

There was no hold-up. The IRS had the unquestionable right to attach the corporation bank account, and close down its business. *Slodov v. United States*, ante. A threat to exercise one's legal rights is not duress. *Burnet v. Chicago Ry. Equipment Co.*, 1931, 282 U.S. 295, 303, 51 S.Ct. 137, 140, 75 L.Ed. 349; *Fidelity & Casualty Co. v. United States*, Ct.Cl., 1974, 490 F.2d 960. It is a daily occurrence for embattled debtors to buy time. Such undertakings, so long as the creditor has acted legitimately, have never been thought to fail for lack of consideration, or to be vulnerable to a claim of duress. Plaintiff's claim that he was not personally liable for the 1971 debt is only an attempt to muddy the waters. Parties other than the debtor may equally buy it time —as, for example, a stockholder, by adding his signature to a company note. Plaintiff here, with his personal check, made a contribution to the corporation's capital which bought more time for the business. The motivating pressure was the corporation's economic plight, not illegal duress. Unhappily for plaintiff, it turned out that he made a poor bargain, but that is irrelevant to the present question. So is the fact that he had an obligation of his own that he would have preferred to have satisfied. The facts in this case are somewhat unusual, but the principles are not.

The complaint is dismissed.

---

1972 FICA obligations. *Monday v. United States*, 7 Cir., 1970, 421 F.2d 1210, 1216–17, *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48.

2. *Compare*, Gunman to Jack Benny, "Your money or your life." Pause. Gunman, "Well, what are you waiting for?" Benny, "I'm thinking."

3. It is not comprehensible how plaintiff could think he has any claim with respect to the corporate checks. *Slodov*, his sole reliance, does not suggest that the company did not remain liable for 1971 FICA, irrespective of its financial condition at any point. It cannot be thought that a creditor is obliged to apply a debtor's payment to its recent debt rather than to an older one, unless it accepts the payment with that understanding. Here the understanding was just the opposite. If, for some reason, that understanding is to be disregarded, there was no agreement at all.