UNITED STATES of America, Plaintiff,

v.

Donald H. and Kathleen YOUNG, et al., Defendants.

No. 76–C–332.

United States District Court,
E. D. Wisconsin.

Dec. 11, 1981.

Jeffrey D. Snow, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Harry T. Christon, Milwaukee, Wis., for defendants Donald and Kathleen Young.

Truman Q. McNulty, Kluwin, Dunphy, Hankin & McNulty, and Michael R. Wherry, Mulcahy & Wherry, Milwaukee, Wis., for defendants Ronald and Patricia Werowinski.

David I. Rothstein, Milwaukee, Wis., for defendant Donald Bruce Young.

## MEMORANDUM AND ORDER

WARREN, District Judge.

In this civil action, the United States of America (the "Government") seeks to obtain judgments against Donald H. Young and Kathleen Young, husband and wife, for their alleged failure as responsible persons of the Ace Roofing and Sheet Metal, Inc. (the "Company") to pay over to the Government trust fund taxes of that company for the second through fourth quarters of 1969. In addition, the Government seeks judgments against Donald Bruce Young and Ronald J. and Patricia A. Werowinski as transferees and fraudulent conveyors of a parcel of property formerly owned by Donald H. and Kathleen Young which, the Government claims, is subject to a federal tax lien. Finally, the Government seeks to enforce its tax lien, in part, by foreclosing a 15 foot by 200 foot parcel of property currently owned by Donald H. and Kathleen Young.

In a memorandum and order filed April 3, 1979, the Court granted the Government's motion for partial judgment and found Donald H. Young liable under 26 U.S.C. § 6672 for the Company's unpaid trust fund taxes. The Court reached that decision after concluding that Donald H. Young was a responsible person required to collect the taxes in question and that he willfully failed to pay the taxes over to the Government. In its April, 1979, memorandum and order, the Court also found Kathleen Young to be a responsible person re-

quired to collect taxes for the Company. It denied the Government's motion for summary judgment with respect to her, however, after concluding that genuine issues remained as to whether she knew the taxes were due and whether she knew they were not paid.

On November 10, 1980, the first day of a three-day court trial, the Government presented its evidence in support of its claims. On December 3, 1980, the Court dismissed the Government's claim against Donald Bruce Young. On December 22, 1980, the remaining defendants presented their defenses, and on April 9, 1981, the parties presented their closing arguments to the Court. The following constitutes the Court's findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

I. Liability of Kathleen Young

█ Because the Court determined that Kathleen Young was a responsible person required to collect the trust taxes for the Company prior to the trial, the only issues remaining for trial on the Government's claim against her were whether she knew the taxes were due and whether she willfully failed to pay them.

To establish that Kathleen Young knew the taxes were being withheld but not being paid over to the Government during the time in question, the Government relied primarily on Kathleen Young's affirmative response to the following request for admission:

1(b) You knew that monies being withheld from the employees of Ace Roofing and Sheet Metal, Inc., were not being paid over to the United States at various times during the second through fourth quarters of 1969.

Answer: Yes.

To establish that Kathleen Young willfully failed to pay over the trust taxes to the Government, the Government relied on portions of her testimony from trial. Specifically, it contended her willfulness was established by admissions that she was a part-time bookkeeper for the Company, that on weekends she balanced the Company's checkbooks with her husband, and that she decided with her husband which creditors would be paid.

To establish Kathleen Young's liability under section 6672, the Government also relied on the cancelled payroll checks and checks to creditors other than the Government which were endorsed by her during the second through the fourth quarters of 1969. In addition, the Government relied on Exhibit F, a Report of Interview with her conducted by Agent A. G. Seemann on February 2, 1971. Mrs. Young testified that she signed the report and that she always read things before signing. During the interview, in response to a series of questions, she indicated she first became aware that the taxes were not being paid when the first payment could not be met; that she tried to collect the money to pay it; and that she knew some materialmen were paid during the period tax liabilities were accruing.

During questioning by her attorney, Kathleen Young attempted to minimize her involvement with the Company. She testified that during the period in question she worked as a housewife and full-time typist for Western Union in addition to working part-time for the Company. She said she never signed any of the Company's tax returns and that it was not her job to pay the Company's taxes.

Having considered Kathleen Young's testimony and the evidence pertaining to the Government's section 6672 claim, the Court has little difficulty in finding that Kathleen Young willfully failed to pay over the trust fund taxes due the Government during the second through fourth quarters of 1969. Although her day-to-day involvement with the Company was relatively minor in comparison to the involvement of her husband, her admission that she knew the taxes were not being paid while materialmen were being paid, and the copies of cancelled payroll checks and checks to creditors other than the Government firmly establish that she willfully failed to pay over the taxes due the Government by knowingly using availa-

ble funds to prefer other creditors over the United States. *Monday v. United States*, 421 F.2d 1210 (7th Cir. 1970). Therefore, judgment against her in the amount of $11,206.02, the amount assessed by the Government on August 13, 1971, plus interest from that date, will be entered forthwith.

## II. Enforcement of Judgment

Ordinarily, in actions arising under 26 U.S.C. § 6672, the Court need only determine whether a violation of the statute has occurred. In this action, however, the Court's role is not completed at this juncture because the Government seeks to enforce its judgment against Donald H. and Kathleen Young by tracing a tax lien filed against a parcel of property formerly owned by them to the current residence of Patricia A. and Ronald J. Werowinski, their daughter and son-in-law. In addition, the Government seeks recovery against Donald Bruce Young, the son of Donald H. and Kathleen Young, and the Werowinskis on the basis of their alleged involvement in transactions which the Government asserts were fraudulent. After discussing the events surrounding the transfer of the property in question, the Court will address the Government's alternative theories for enforcing its judgment.

### A. Property Transfers.

Three parcels of property, owned or formerly owned by various members of the Young family, are involved in this action. Parcel I is a 63 foot by 200 foot vacant lot located in Franklin, Wisconsin. In 1971, the lot was owned by Mildred Young, Donald H. Young's mother. In September of 1973, Mildred Young sold this parcel to the Werowinskis. In 1979, the Werowinskis transferred this parcel, along with Parcel II, to Robert E. and Ruth L. Frederickson. Neither the Fredericksons nor Mildred Young are parties to this action. The Government has never filed a tax lien against this parcel and does not seek to enforce its judgment against it at this time.

Parcel III is a 15 foot by 200 foot driveway located in the same area as Parcel I.

Donald H. and Kathleen Young are the owners of this parcel. The Government does seek to enforce its judgment by foreclosure of this parcel. At trial, neither Donald H. nor Kathleen Young objected to the Government's request to foreclose this property to partially satisfy its judgment. Accordingly, the Court will order foreclosure of Parcel III.

Parcel II, a 63 foot by 200 foot lot adjacent to Parcel I, is the crucial piece of property involved in this action. Donald H. and Kathleen Young bought this parcel in 1956 from Donald H. Young's father and built a home there. In August of 1967, they mortgaged their residence to G. Hayward Wood for a loan of $9,000.00. In March of 1969, they further mortgaged their residence to Wood for a loan of $4,014.00.

The interrelation between the tax problems of Donald H. and Kathleen Young, their other financial problems, and the ownership of Parcel II became quite involved in 1971. In February of 1971, at the request of the Internal Revenue Service (IRS), Donald H. Young, on behalf of the Company, submitted a statement of financial condition showing outstanding taxes in the sum of approximately $14,000.00.

On March 22, 1971, Donald H. and Kathleen Young filed their respective petitions in bankruptcy. On July 8, 1971, the Referee closed their respective files as "no asset" cases. In those actions, both Donald H. and Kathleen Young listed as a debt the unpaid trust fund taxes of the Company.

On August 10, 1971, the IRS mailed to Donald H. and Kathleen Young notices of a proposed settlement in the amount of $11,206.02 arising from their failure to pay the Company's taxes. On August 13, 1971, the IRS assessed Donald H. and Kathleen Young $11,206.02 for the Company's unpaid trust fund taxes for the second through fourth quarters of 1969. On August 22, 1971, nine days after the IRS had assessed them for the unpaid taxes, Donald H. and Kathleen Young deeded Parcel II to their 21 year old son, Donald Bruce Young, for no consideration. Donald Bruce Young held

legal title to the property until September of 1973, when he transferred title to his sister Patricia and her husband Ronald.

On December 3, 1971, the Government filed a Notice of Tax Lien of its tax assessments of August 13, 1971, against Donald H. and Kathleen Young. This notice did not contain a legal description of Parcel II and was filed only under the names of Donald H. and Kathleen Young.

In January of 1972, at the request of the IRS, Donald H. and Kathleen Young filed a joint statement of financial condition setting forth no assets.

Although they no longer held legal title to Parcel II, Donald H. and Kathleen Young listed the property for sale with Ritter Realty in July of 1972. The asking price was $22,000.00. In October of 1972, a title binder was prepared for Katherine Hoffman, a prospective purchaser of Parcel II. That title binder made reference to the notice of the lien filed by the Government against Donald H. and Kathleen Young. Shortly after the preparation of the title binder, the potential sale to Ms. Hoffman fell through.

It is unclear exactly how long Donald H. and Kathleen Young remained in the house on Parcel II after they transferred title of the property to their son. Testimony of the witnesses at trial revealed that Kathleen Young moved from the house to the northern part of the state in October of 1972, that the house was vacant for an unspecified period of time; and that the house was rented for one month to tenants who damaged the premises.

In approximately June of 1973, Ronald J. and Patricia Werowinski began renting the home on Parcel II. The Werowinskis paid $150.00 per month rent and mailed the money directly to Donald H. Young. Patricia Werowinski testified that during the time she and her husband were renting the house on Parcel II, she considered the home to be her parents' home.

During the summer of 1973, the Werowinskis began making plans to purchase Parcels I and II. They retained Attorney James Lippert to handle the transaction for them. Attorney Kenneth Ogie, the same attorney who Kathleen Young testified advised her and her husband to transfer title of Parcel II to their son, handled the closing for Donald H. and Kathleen Young.

Attorney Lippert testified he had no contact with Donald H. or Kathleen Young prior to the closing of the property sale on September 18, 1973, and was not aware the Youngs were represented by counsel until Attorney Ogie appeared at the closing. He also testified that he obtained a title binder which did not reflect the outstanding tax lien.

Although the sale of Parcels I and II was completed in September of 1973, Attorney Lippert spent additional time after the closing attempting to determine whether a mortgage the Youngs had with Attorney Ogie's wife had ever been satisfied. Originally, the title company said the $1,000.00 mortgage had not been satisfied and would, therefore, continue to be a lien on the property. Upon further checking, Attorney Lippert discovered the mortgage had been satisfied, and he informed the Werowinskis of this in February of 1974.

Attorney Lippert received $200.00 for his services for the Werowinskis, a figure he testified was higher than his normal fee because of the problems caused by the confusion over the Ogie mortgage.

The Werowinskis purchased Parcel I for $1,000.00 and Parcel II for $21,000.00, amounts which the Government conceded at trial were fair market prices. Because the only evidence of the actual distribution of the $22,000.00 price consists of three unsigned closing statements, the Court is unable to determine exactly how the proceeds were distributed. It does appear, however, that of the $22,000.00 sales price, $16,452.50 was allocated to G. A. Wood to satisfy the two mortgages he held on Parcel II; $1,161.04 was used to pay delinquent taxes and interest for 1971 and 1972; and $375.70 was used to pay for various closing costs. As a result of these deductions the actual amount due Donald H. and Kathleen Young was $3,826.76 (Defendant's exhibit 13).

In July of 1974, the Government refiled its Notice of Federal tax liens. This lien notice contained a property description of the homestead. On May 19, 1976, the Government instituted this action setting forth its various liens and its claim against the homestead. It did not, however, file a *lis pendens* pertaining to Parcel II, either at the time it filed suit or at any time subsequent to the filing of the suit.

Finally, in 1979, the Werowinskis, without notifying the Government, sold Parcels I and II to Robert E. and Ruth L. Frederickson for $58,125.00.

### B. The Tracing Theory.

■ The Government seeks recovery from the Werowinskis on two distinct theories—a tracing theory and a fraudulent conveyance theory. Under its tracing theory, the Government contends its lien on Parcel II "traces" to the *current* residence of the Werowinskis because the Werowinskis used the proceeds from the sale of Parcel II to purchase their current residence.

The Court finds the Government's tracing theory meritless. The Werowinskis have never been the subject of the Government's liens. Consequently, absent a showing of fraud, it would be unjust to hold them liable for debts incurred by other taxpayers merely because they were former owners of the property the Government claims was encumbered by a lien at the time they owned it.

### C. The Fraudulent Conveyance.

The transfer of Parcel II from Donald H. and Kathleen Young to Donald Bruce Young and the subsequent transfer from Donald Bruce Young to the Werowinskis are the most troubling aspects of this action. The Court is convinced that the overriding, if not sole, reason for the original transfer of Parcel II to Donald Bruce Young was to defraud the Government of the trust fund taxes due it. There is testimony in the record that Attorney Ogie advised Donald H. and Kathleen Young to make the original transfer of the property to their son. In addition, the Court ques-

tions Attorney Ogie's candor in his deposition testimony, portions of which were introduced at trial. The issue to be resolved here, however, does not directly concern Attorney Ogie's questionable involvement in this action. Rather, the issue to be resolved is whether Donald Bruce Young and/or the Werowinskis were involved in the fraud against the Government.

### (1) Donald Bruce Young.

■ Donald Bruce Young testified at trial that he agreed to accept title to Parcel II in 1969 after his father, who was moving up north, asked him to do so. He said he did not know what a warranty deed or quit claim was and did not know the legal implications of the transfer. He stated that Attorney Ogie was the attorney who handled the transfer and that he never saw the quit claim deed. He initially testified he did not realize there was a lien on his parents when he transferred the property to the Werowinskis. However, after counsel for the Government confronted him with his previous deposition testimony in which he said he did know of the lien at the time of the second transfer, he said he was confused about the lien.

During the time he "owned" Parcel II, Donald Bruce Young never lived in the house located there. Nor did he ever pay any taxes on the property, purchase any insurance or make any mortgage payments. He performed no maintenance other than chores such as cutting the lawn. Donald Bruce Young further testified that at the closing of the sale of Parcels I and II to the Werowinskis, Attorney Ogie told him where to sign the documents and directed him to take a check to the Glendale Bank at Bayshore Shopping Center. He said he cashed the check and gave the money to his parents.

After listening to Donald Bruce Young's testimony, the Court reached the conclusion that he knew his parents were having financial difficulties in 1971 and knew there was a federal tax lien against them when he transferred the house in 1973. Despite Donald Bruce Young's knowledge of these

facts, the Court nonetheless concluded that Donald Bruce Young was not a part of the scheme to defraud the Government.

Several factors led the Court to this decision. First, the Court is of the opinion that Donald Bruce Young was ignorant of the legal implication of the transfer. At the time of the initial transfer, he was a 21 year old high school dropout with no background in real estate. Furthermore, he never examined any of the documents prepared in connection with the transfer and relied on his parents' attorney for guidance.

Second, the Court is of the opinion that Donald Bruce Young was also ignorant of the true reasons for the initial transfer of the property to him. He knew his parents were planning to move up north and planning to sell their home. Consequently, in agreeing to the transfer of the property to him, it is conceivable that he merely thought he was complying with his father's desire to have legal title vested in someone in the Milwaukee area to make it easier to sell the property. Moreover, although he acknowledged during his deposition that he knew of federal tax liens against his parents when he "sold" the property to the Werowinskis, there was no evidence showing that he knew of the assessment against them at the time he obtained title to the property.

Finally, although Donald Bruce Young knew the Government had tax liens against his parents in 1973 when he transferred the property to the Werowinskis, there was no evidence presented at trial which showed he knew there had been a lien filed against Parcel II. It is also important to note that at the closing in 1973, just as in 1971, Donald Bruce Young merely followed the directions of Attorney Ogie.

In summary, on the basis of Donald Bruce Young's ignorance of the legal implications of the transfer of the property, his ignorance of the true reasons for the transfer and his total reliance on Attorney Ogie for advice, the Court rejects the Government's claim that he was involved in the scheme to defraud the Government and orders its claims against Donald Bruce Young be dismissed with prejudice.

(2) The Werowinskis.

■ Having carefully reviewed the evidence presented at trial, the Court also finds the Werowinskis were not a part of the scheme to defraud the Government.

Two essentially undisputed facts lead the Court to this conclusion. First, at all times they were dealing with Donald H. and Kathleen Young, the Werowinskis were bargaining at arm's length. During the time they were renting from the Youngs, they paid $150.00 per month rent. More important, they purchased Parcel II for $21,000.00, an amount the Government conceded was a fair market value. Had the Werowinskis known of the tax lien, it would have been foolhardy for them to pay the fair market value for the property.

Second, Attorney Lippert's involvement in the sale of Parcel II to the Werowinskis also rebuts the Government's contention that they were part of the fraud. It simply would not have made sense for the Werowinskis to retain Attorney Lippert for the closing had they known Parcel II was encumbered by a lien because the risk of Attorney Lippert, an experienced real estate attorney, discovering the lien would have been too great. The Court found Mr. Lippert to be a credible witness and is satisfied that he played no part in the scheme to defraud the Government. He carried out his duties professionally prior to the closing and continued to represent his clients after the closing by clearing up the confusion over the mortgage to Attorney Ogie's wife.

Based on the foregoing, the Court dismisses the Government's claims against Ronald J. and Patricia A. Werowinski and denies its request for foreclosure of their current residence.

Although the evidence presented at trial was insufficient to prove that Donald Bruce Young or the Werowinskis were involved in the scheme to defraud the Government, the Court is not of the opinion that the Government was unjustified in pursuing its claims against these defendants. Their knowledge

of their parents' tax problems and other financial problems provided the Government with sufficient ground for believing they too were involved in defrauding the Government.

### III. Viability of Government's Lien on Parcel II

In their post-trial brief, the Werowinskis recognize that the Government has withdrawn its claim for a lien against Parcel II. Notwithstanding the Government's actions, the Werowinskis believe there remains a cloud on the title of that real estate and they ask the Court to clear the title at this time by denying any lien against that property.

Because the Government no longer seeks to foreclose its lien against the current owners of that Parcel II in this action, the Court rejects the Werowinskis' contention that the Government's failure to join those owners as indispensable parties requires dismissal of its lien. Whether the Government can enforce its lien against the current owners of Parcel II is simply no longer an issue in this case.

### IV. Summary

Based on the foregoing, it is ordered that:

(1) judgment be entered against Donald H. and Kathleen Young and in favor of the United States of America in the amount of $11,206.02, plus interest, from August 13, 1971;

(2) the Government's request for foreclosure of Parcel III be and hereby is granted. The Government is to submit to the Court its proposal for the sale of this property within thirty (30) days of the date of this order;

(3) the Government's claims against Donald Bruce Young, Patricia H. Werowinski and Ronald J. Werowinski be and hereby are dismissed with prejudice;

(4) the Government's claim for foreclosure of the Werowinskis' current residence be and hereby is dismissed with prejudice.