Robert ANDERSON, Plaintiff and Counterclaim Defendant,

v.

UNITED STATES of America, Defendant, Counterclaim Plaintiff and Crossclaim Plaintiff,

v.

Anthony PUSATERI, Crossclaim Defendant.

No. 91 C 1871.

United States District Court, N.D. Illinois, Eastern Division.

May 6, 1994.

Samuel M. Sorkin, Deerfield, IL, for Anderson.

Charles J. Cannon, Washington, DC, for U.S.

Paul W. Casbarian, Schaumburg, IL, for Pusateri.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This action has followed the typical pattern of cases that deal with the imposition of individual penalties under 26 U.S.C. § 6672(a),[1] arising out of a corporate employer's failure to pay withholding taxes to the United States:

1. Robert Anderson ("Anderson") originally paid a small portion of the assessed penalty and has sued for refund of that amount, conferring District Court jurisdiction under 28 U.S.C. § 1346(a)(1).

2. In addition to answering Anderson's Complaint, the United States filed a counterclaim against Anderson for recovery of the rest of the penalty assessment (which aggregates $117,631.74)—see also the jurisdictional provision of Section 7402(a).

3. Finally, the United States has also filed a Crossclaim against Anthony Pusa-

---

1. That section and all other provisions of the Internal Revenue Code (Title 26 of the United States Code) will be cited simply as "Section—" in this opinion.

teri ("Pusateri") for recovery of the same 100% penalty.

At issue in the case is whether, during the calendar quarters at issue (those ended June 30, September 30 and December 31, 1986), Anderson (then the President and a 50% shareholder of the employer, Diamond Limousine Manufacturing Corporation ("Diamond")) and Pusateri (then Diamond's Vice-President and 50% shareholder) were "responsible persons" [2] under Section 6672(a) so as to be liable when Diamond did not pay the withheld taxes.

Following the parties' joint submission of a proposed Final Pretrial Order ("FPTO") to provide the backdrop for trial of the case, the United States announced its intention to file a motion in limine to bar certain evidence as inadmissible. After considerable tugging and hauling, the parties have also filed a stipulation of agreed facts calculated to focus the issues posed by the motion in limine. That motion has now been fully briefed, and this opinion explains the reasons for granting the motion.

### Facts [3]

It is undisputed that Diamond failed to pay over the withheld employment taxes (income taxes and social security taxes) in the manner required by statute for the calendar quarters at issue. And at least for current purposes, it may be assumed that both Anderson and Pusateri were responsible persons as to Diamond throughout that period.[4] In any event, there is no question that Diamond's continued operation during that period involved the payment of other obligations to other creditors—that is, Diamond's funds were used to finance its operations and not to lodge the withheld taxes with the United States.

What instead serves as the predicate for Anderson's claim and for the Anderson–Pusateri defense to the United States' Counterclaim and Crossclaim—the evidence that the United States seeks to bar via its motion in limine—stems from events *after* Diamond had paid the wages to its employees and had withheld from those payments the employment taxes that were not thereafter turned over to the government. Toward the end of the third of the three calendar quarters (in December 1986) Diamond had something over $250,000 in its checking account, but its bank latched onto those funds to pay Diamond's bank indebtedness in that month.[5]

With Diamond thus placed in deep financial distress, it entered into an agreement on December 23, 1986 to sell its assets to newly-formed Sterling Limousine Manufacturing Corporation ("Sterling"). As part of that transaction Sterling agreed to assume Diamond's unpaid withholding taxes in an amount not to exceed $180,000. After Sterling took over, discussions ensued between Sterling and the Internal Revenue Service, but the United States would not accede to Sterling's proposed limitations on its rights to collect the taxes. Consequently the transaction ultimately unraveled, with the amount now at issue still unpaid.

### "Responsible Person" Liability

Section 3102(a) requires an employer to withhold employment taxes from its employees' wages, and Section 7501(a) compels the employer to treat the withheld taxes as a

---

**2.** In fact the statutory language refers to "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title." But as *Slodov v. United States,* 436 U.S. 238, 246 n. 7, 98 S.Ct. 1778, 1785 n. 7, 56 L.Ed.2d 251 (1978) recognizes, the cases under Section 6672(a) generally employ the shorthand phrase "responsible person" instead of constantly repeating the longer and more cumbersome phrase. Like those cases (including *Slodov*), this opinion will do the same.

**3.** This section does not purport to set out anything even approaching all of the facts that are embodied in the FPTO or in the more recent stipulation of agreed facts. Instead it is limited to the skeletal background required to deal with the motion in limine.

**4.** Pusateri does dispute his check signing authority for Diamond, although the signature cards on file with Diamond's bank bear Pusateri's as well as Anderson's signature. No finding on that score is intended by this opinion—that issue remains to be resolved at trial.

**5.** Anderson and Pusateri claim that action was taken in breach of the loan agreements between Diamond and the Bank, but whether or not that is true is really irrelevant to the current motion.

"special fund in trust for the United States." Although Reg. § 31.6011(a)–4 requires quarterly payroll tax returns to be filed within one month after the end of each calendar quarter, the employer's tax liability arises when the wages are *paid* (with the withheld portion being *kept* by the employer), and not on the later due date of the quarterly tax return.

To protect the fisc against losses if employers fail to remit those trust fund taxes to the government, Section 6672(a) provides another source of responsibility—the persons who are required to collect and pay over for the employers. And Section 6671(b) defines a "person" for that purpose as "includ[ing] an officer or employee of a corporation ... who as such officer [or] employee ... is under a duty to perform the act in respect of which the violation occurs." Section 6672(a) accomplishes its purpose by imposing a 100% penalty on any such person who willfully fails to collect or pay over the tax.

All of that is conceded by Anderson and Pusateri—indeed, their own Mem. 3–4 on the current motion says precisely that. What Anderson and Pusateri fail to acknowledge, however, is the *time* at which willfulness is to be evaluated in order to determine the existence or nonexistence of individual liability of responsible persons for the Section 6672(a) penalty. *Slodov*, 436 U.S. at 246–50, 98 S.Ct. at 1784–87 rejected the notion that Section 6672(a) liability is imposed on a person "only if all three duties—(1) to collect, (2) truthfully account for, *and* (3) pay over—were applicable to him with respect to the tax dollars in question" (*id.* at 247, 98 S.Ct. at 1785). And in the course of so holding, *Slodov* plainly signaled that Section 6672(a) liability arises as soon as the obligation to *collect*—that is, the withholding obligation itself—arises. This Court's colleague Honorable Marvin Aspen has put the matter succinctly in *Mulee v.*

*United States,* 648 F.Supp. 1181, 1185, 1186 (N.D.Ill.1986) (numerous citations omitted):

> [L]iability for the taxes attaches upon their collection, not upon the date set for filing the return.

> \* \* \* \* \* \*

> In the present case, [the responsible person] had a duty to keep the withheld taxes as [sic] trust from the day the taxes were withheld, regardless of the due date of the tax return.

Although our Court of Appeals' opinion in *Monday v. United States*, 421 F.2d 1210 (7th Cir.1970) focused primarily on the legal test for willfulness rather than on the timing issue just discussed, its thrust is clearly in accord with what has just been said.[6] *Monday, id.* at 1216 confirmed that willfulness does not require any intent to defraud or to deprive the United States of taxes, and that there is no need to show bad motives or wicked design on the part of the responsible person. Instead *Monday, id.* approved this jury instruction on the willfulness issue:

> An act is willful if it is voluntary, conscious, and intentional. If you find that plaintiff and/or third-party defendant knowingly used available funds to prefer other creditors over the United States then you must find that he acted willfully.

What *Slodov* and *Monday* and *Mulee*—and a host of cases not cited here—effectively teach is that at the very moments that Diamond withheld the funds at issue from its payments of wages and then proceeded to apply those funds to pay other creditors, rather than assuring their payment to the government for which it was then acting as trustee, the liability of Diamond's responsible persons for the 100% penalty by reason of their willful conduct became fixed. That penalty would of course be abated to the extent that actual *payments* were later made to the United States, but unsuccessful or

---

6. This Court's opinion in another Section 6672(a) case, *Peterson v. United States*, 758 F.Supp. 1209 (N.D.Ill.1990) confirmed the continuing authority of *Monday* as a seminal decision in this area of the law (*id.* at 1215 n. 4):

> As later citations reflect, *Monday* (though two decades old) remains perhaps the most extensive exposition in this Circuit of the general

legal principles applicable to such withholding cases. It continues to be cited frequently for those principles (which have not changed since then), and these Conclusions will follow the lead of other courts (including our Court of Appeals and Courts of Appeals elsewhere) in that respect.

aborted efforts to make such payments—however well-intentioned—could not retrospectively reconvert the original willfulness of the responsible persons to something less than that.

That is the essential source of law from which such cases as *Mulee* spring. And that is why the United States is right in urging that the *later* agreement between Diamond and Sterling is wholly irrelevant to the issue of Anderson's and Pusateri's Section 6672(a) liability.

Although the other issue that has been posed by the parties—Anderson's and Pusateri's attempt to charge the United States with a lack of due diligence in its efforts to collect from Sterling—is not precisely parallel to the issue just discussed, the same conceptual underpinning also renders irrelevant any evidence going to that second subject. Quite apart from the United States' *factual* arguments negating that claim, no basis for estoppel has been suggested here. Just as *Mulee,* 648 F.Supp. at 1185 demonstrated why *Feist v. United States,* 607 F.2d 954, 221 Ct.Cl. 531 (1979) did not exculpate the responsible person in *Mulee* from Section 6672(a) liability, so Anderson and Pusateri cannot invoke *Feist* in support of an arguable estoppel in their favor. *Monday,* 421 F.2d at 1217–18 flatly rejected such an estoppel argument (as did *Mulee,* 648 F.Supp. at 1187), and the circumstances sought to be relied upon by Anderson and Pusateri here as the predicate for estoppel are of no greater force.

### Conclusion

Both facets of the United States' motion in limine are granted. Anderson and Pusateri will not be permitted to introduce at trial the evidence challenged by the United States' motion.