**BUILDERS FINANCE COMPANY, INC., Plaintiff,**

**v.**

**UNITED STATES of America and R. I. Nixon, former District Director of Internal Revenue, Defendants.**

**William F. MUELLER, Plaintiff,**

**v.**

**UNITED STATES of America and R. I. Nixon, former District Director of Internal Revenue, Defendants.**

**Michael J. MALONE, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. Nos. 27362, 27250 and 27475.**

United States District Court,
E. D. Michigan, S. D.

Dec. 24, 1970.

**492**

Mitchell Rogovin, by David A. Wilson, Jr., Johnnie M. Walters, Asst. Atty. Gen., Donald R. Anderson and James P. Heffernan, Attys., Dept. of Justice, Washington, D. C., Ralph B. Guy, U. S. Atty., and John H. Hausner, Asst. U. S. Atty., for the United States.

Frederick W. Heath, of Shea, Shea, Heath & Solner, Birmingham, Mich., for William F. Mueller.

J. Bruce Donaldson, of Chirco, Donaldson, Ruwart & Musgrove, Detroit, Mich., for Michael J. Malone.

Dale C. Campbell, Detroit, Mich., for Builders Finance Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McCREE, Circuit Judge (sitting by designation).

1. These are actions, consolidated for trial, brought by plaintiffs William F. Mueller and Michael J. Malone, citizens of the United States and of the State of Michigan, and Builders Finance Company, Inc., a Michigan corporation with offices in Detroit, Michigan, to recover amounts collected by the Internal Revenue Service under the penalty provisions of the Internal Revenue Code of 1954, §§ 6671, 6672.

2. The Defendant United States counterclaimed against all three plaintiffs pursuant to 26 U.S.C. § 402(a) and 28 U.S.C. § 1345, for $196,246.03, the uncollected balance of the penalty assessment.

3. Dearborn Machinery Movers Company, Inc., was a Michigan corporation engaged in the business of heavy industrial equipment moving from 1946 until August 17, 1962, when it went into bankruptcy.

4. None of the plaintiffs were shareholders, directors, officers, or employees of Dearborn Machinery Movers.

5. At the time of bankruptcy, Dearborn was indebted to the United States in the amount of $196,283.95 for U. S. withholding and F.I.C.A. taxes for the period May 1, 1962 to August 17, 1962.

6. The Government also assessed the same penalties against Edward R. Galli and James L. Canon, former president and treasurer-controller, respectively, of Dearborn, and who were so employed during the period of the delinquency.

7. On April 19, 1962, Dearborn contracted with plaintiff Builders Finance to obtain financing and operational management assistance in an effort to prevent the heavy losses it was experiencing. The contract was negotiated by Galli, President, Director, and controlling stockholder of Dearborn, and by Ernest G. Wells, President, Director, and sole operating officer of plaintiff Builders Finance.

8. Under the contract, Builders agreed to lend Dearborn $150,000 to be secured by a mortgage on some of Dearborn's real property and by the assignment of Dearborn's accounts receivable. Builders agreed to furnish Dearborn a plant

manager and a controller, and Dearborn agreed to designate Builders as sole beneficiary of insurance policies owned by it on the life of Galli. Galli agreed to place all his voting stock in escrow and to give Builders proxy rights. Dearborn agreed to pay Builders $30,000 per year for the services of the plant manager and the controller, and to pay a portion of future profits.

9. This contract was negotiated after Builders had made unsuccessful attempts to obtain more extensive financing for Dearborn from other sources. The parties regarded the April 19 contract as only a temporary solution to Dearborn's financial problems, and after its execution, Builders continued to seek more substantial outside financing for Dearborn.

10. The Builders-Dearborn contract was never fully performed. Galli's stock was not escrowed and Builders was not designated as beneficiary of the Galli insurance policies.

11. Plaintiff Mueller was a director, officer and shareholder of Builders Finance; plaintiff Malone was only a new Builders employee, brought in by Mueller.

12. Both Malone and Mueller were designated by Builders to work at Dearborn during the entire period of the tax delinquency.

13. Mueller was sent to Dearborn as "Plant Manager" to protect Builders' investment and to maximize the efficiency of Dearborn's operations. During this period, Mueller supervised the day-to-day operation of Dearborn, convened and conducted Dearborn staff meetings, exercised authority over President Galli, Treasurer Canon, and plaintiff Malone, negotiated for outside financing for Dearborn, and gave orders for creditor payment priorities. Although Mueller exercised substantial managerial control over both the operational and planning aspects of Dearborn, he did not formally supplant Galli as the chief executive officer of Dearborn.

14. Malone was sent to Dearborn as the "Controller" to assist Mueller and to evaluate Dearborn's accounts payable to identify unnecessary and improper expenditures. Malone exercised substantial control over the accounting department of Dearborn but did not supplant Canon as the chief financial officer of Dearborn.

15. Builders Finance told Mueller and Malone that every Dearborn check must bear two signatures: that of either of them and of an authorized Dearborn officer. Mueller and Malone understood the purpose of their signatures to be only an assurance that expenditures were legitimate. Neither ever refused to sign a check he considered to be for a legitimate business purpose.

16. The accounting department of Dearborn was divided by function. Although Malone supervised the accounts payable division, he did not exercise supervision over the payroll section.

17. Both Mueller and Malone had extensive prior experience in the types of positions they held for Builders at Dearborn.

18. Although neither Mueller nor Malone took part in the negotiation of the Builders-Dearborn contract, both were aware of its terms while working at Dearborn.

19. No withholding or F.I.C.A. tax returns and no check requests relating to such taxes were prepared by, presented to, or signed by Mueller or Malone or any other agent of Builders.

20. All three plaintiffs knew that Dearborn was having ready-cash difficulties including difficulty in paying federal withholding and F.I.C.A. taxes.

21. Sufficient funds were available during the period May 1 to August 17, 1962, to pay such taxes but payments were made to creditors other than the Internal Revenue Service.

## DISCUSSION

The assessments against plaintiffs were founded upon Section 6672

of the Internal Revenue Code of 1954, which provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

Section 6671(b) defines "person" as "an officer or employee of a corporation" but this is construed to include anyone "so connected with a corporation as to be responsible for the performance of the act in respect of which the violation occurred." United States v. Graham, 309 F.2d 210, 212 (9th Cir. 1962).

A two-part test must then be applied to plaintiffs. Each must be found to have had the *duty* to collect, account for and pay over the tax, and each must be found to have *willfully failed* to do so. Although not explicitly so stated, the Government contends that, under principles of agency law, if either Mueller or Malone is liable for the penalty assessment, Builders must also be held.

■ The duty exists if one has authority over the withholding tax accruals and expenditures of the company. White v. United States, 372 F.2d 513, 178 Ct. Cl. 765 (1967). Builders' contract with Dearborn gave Builders express authority over all operational and accounting activities of Dearborn, and the power to assume total control by exercising its proxy to vote Galli's stock. William F. Mueller came to Dearborn with general authority over Dearborn's operations. Although Dearborn's formal corporate structure was not altered after his arrival, Mueller became, in fact, the chief operating figure in the company. Mueller's authority was superior to that of every employee of Dearborn. He convened and conducted the staff meetings and supervised all department heads and corporate officers including President Galli. Mueller was responsible only to Builders Finance, not to anyone at Dearborn.

Malone's authority, on the other hand, was considerably more limited. His primary activity was supervision of the non-payroll related accounts payable section of the Dearborn accounting department. After Malone's arrival, payroll department personnel continued to regard Dearborn Treasurer Canon as their supervisor. Matters relating to payroll tax decisions were consistently referred to Canon who took action on them without permission from or consultation with Malone. Canon, not Malone, authorized the issuance of checks for tax payment, and prepared and, except on one occasion, signed the quarterly tax returns. Malone had no authority outside the accounting department except as an assistant to Mueller, who was his superior.

■ To prove a willful failure to collect, account for and pay over taxes, it must be shown that the responsible person had knowledge of the tax delinquency and knowingly failed to rectify it, when there were available funds to pay the Government. *See* Campbell v. Nixon, 207 F.Supp. 826 (E.D.Mich. 1962); Datloff v. United States, 252 F. Supp. 11 (E.D.Pa.1966).

In May, 1962, both Mueller and Malone realized that payroll taxes were due and owing and that the company would not be able to pay them in full. On June 13, President Galli wrote a letter to a Detroit attorney asking him to represent Dearborn in efforts to get an extension on taxes which would be due in two days. That letter was initialed by Mueller. Mueller and Malone maintained constant communication with Builders Finance President Wells regarding the business affairs of Dearborn. Builders was furnished with Dearborn's financial statements which included the status of tax accruals and liabilities. There can be little doubt that

all three plaintiffs had knowledge of the tax deficiency and were continually aware of it at least from mid-June, 1962, until the bankruptcy in mid-August.

Plaintiffs do not deny that funds sufficient to pay the taxes were paid to other creditors, including Builders, during the period in question. Dearborn was in deep financial trouble and used money held in trust for the Government to meet operating expenses. Mueller or Malone signed each check for those disbursements.

## CONCLUSIONS OF LAW

 1. Michael J. Malone is not liable to the United States for the penalty imposed by Section 6672 of the Internal Revenue Code of 1954 since he was not under a duty to collect and pay over the withheld taxes.

2. William F. Mueller is liable to the United States for the penalty imposed by Section 6672 of the Internal Revenue Code of 1954 since he had and exercised control over all Dearborn disbursements and over its officers, and, with knowledge of the tax delinquency, disbursed funds to other creditors in preference to the United States.

3. Builders Finance is liable to the United States for the penalty imposed by Section 6672 of the Internal Revenue Code of 1954 since through its officer and director Mueller, and by contract, it possessed and exercised control over all Dearborn disbursements and over its officers, but disbursed funds to other creditors in preference to the United States, with knowledge of the tax delinquency.

4. The practice of the Internal Revenue Service of collecting withholding and F.I.C.A. taxes monthly and quarterly, rather than on the issuance of each payroll, does not alter the Government's ownership of those funds, or the employer's duty to account for them while held in trust for the Government and until they are in fact paid over to the Internal Revenue Service.

5. An order will be entered for plaintiff Malone entitling him to a refund of all amounts paid by him on the assessment to date, with interest and costs, and all tax liens against him shall be discharged. Defendant's counterclaim will be dismissed as to him.

6. Judgments will be entered dismissing the complaints of William F. Mueller and Builders Finance, Inc.

7. Judgments will be entered for the United States against William F. Mueller and against Builders Finance Company for the outstanding delinquent balance, after adjustment for plaintiff Malone's refund, with interest since the date of assessment; provided that such amount be further reduced by all past and future amounts collected by the Government from other persons assessed for the same delinquency or from collections from Dearborn Machinery Movers assets.

The parties will present suitable proposed Orders and Judgments.