**James K. WETZEL, Plaintiff,**

v.

**UNITED STATES of America, Defendant/Third–Party Plaintiff,**

v.

**Ray A. TROMATORE, et al., Third–Party Defendant.**

**Civ. A. No. S89–0677(G).**

United States District Court, S.D. Mississippi, S.D.

March 26, 1992.

Harris H. Barnes, III, Jackson, Miss., for plaintiff.

William D.M. Holmes, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant/third-party plaintiff.

R. Travis Douglas, Kenner, La., Doyle L. Coats, Gulfport, Miss., Robert Gambrell, Biloxi, Miss., for third-party defendant.

## BENCH OPINION

GEX, District Judge.

This cause came on for trial before the Court without a jury on July 22, 1991, with additional testimony being taken on August 1, 1991. The Court, having fully considered the testimonial and documentary evidence presented by both parties at trial, the arguments of counsel, and the applicable law, and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure:

### Findings of Fact

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1346($l$)(1) and § 7422 of the Internal Revenue Code of 1954 over the plaintiff's claim. This Court also has jurisdiction over defendant/third-party plaintiff's claims pursuant to 28 U.S.C. § 1345 and Rule 14 of the Federal Rules of Civil Procedure.

The following facts are established either by stipulation of the parties or by the testimony and exhibits offered at trial. James K. Wetzel, a practicing attorney, is an adult resident citizen of the State of Mississippi. Wetzel brings this action seeking judgment against the defendant/third-party plaintiff, United States of America, in the amount of $21,558.08.

The genesis of this dispute arose some four years ago when certain unpaid employment taxes were assessed against Highball, Ltd. (Highball) pursuant to 26 U.S.C. § 6672. Wetzel voluntarily paid the assessment which represented the unpaid employment taxes of Highball for all four quarters of 1986 and the first two months of 1987, together with interest.

Third-party complaints were also filed by the United States against the third-party defendants, James F. Ussery and Ray A. Tromatore, seeking judgments against them for the unpaid taxes of Highball for either all or part of the aforesaid tax periods. The claim against Ussery amounts to $21,558.08, plus interest as provided by law. The claim against Tromatore has been reduced to $13,929.34, plus interest as provided by law [1], following a determination by the United States that Tromatore is only liable for the employment taxes in question for the first three quarters of 1986.

Highball was incorporated on January 29, 1986, by Wetzel, Ussery, and Tromatore for the purpose of operating a restaurant in Gulfport, Mississippi by the name of Vincent's. These individuals were all members of the board of directors and each owned approximately one-third of the corporate stock. Tromatore was elected president of the corporation, Wetzel vice-president, and Ussery secretary-treasurer. Wetzel and Ussery each contributed monies to the corporation upon incorporation in 1986, and in August of 1986, they obtained an $8,000 loan from the Metropolitan Bank. That money was contributed to the corporation for the payment of bills.

All of the parties had check signing authority on the corporate checking account during the period in question, even though Tromatore wrote no checks after October 1, 1986, when he left the business. During this time period Wetzel wrote three checks: (1) February 26, 1986, in the amount of $92.22; (2) May 1, 1986, in the amount of $64.88; and (3) November 7, 1986, for $130.40.

As vice-president of Highball, Wetzel testified that he was to provide legal assistance and capital to the corporation as well as solicit patrons for business purposes. During the initial stages of the business, Tromatore served as the general manager as well as the chef. Shortly thereafter (some time in early summer, 1986), Ussery took over as general manager and Tromatore was relegated to duties as the chef.

During the fall of 1986 a rift developed between Tromatore and Ussery. Ussery recommended to Wetzel that Tromatore be removed as chef of the restaurant. As general manager, Ussery fired Tromatore. Although Wetzel was not in charge of the daily hiring and firing, he did acquiesce in the removal of Tromatore.

Based upon a continuing cash flow problem, both Wetzel and Ussery agreed that the restaurant should be sold. In February 1987, the corporation was sold to Lewis Langlinais.

At trial, Wetzel testified that he did not keep up with the restaurant's daily activities but instead relied on the business acumen of Ussery. Wetzel testified that he requested profit and loss statements on a regular basis but such were never received. To the contrary, Ussery maintained that Wetzel never requested a profit and loss statement. Wetzel further stated that: (1) he never saw any of the tax returns for 1986 or the first quarter of 1987 prior to January 1987; (2) he was first apprised of the back taxes when he received the § 6672 tax penalty; and (3) that he never advised the corporation not to pay the taxes or discussed payment or non-payment of any creditors. Wetzel acknowledged that he examined the corporate checkbook from time to time while at the business. However, he was unable to ascertain Vincent's financial condition because of the deficient bookkeeping. Ussery maintained that, for the most part, the checkbook and outstanding bills remained at the restaurant during the time in question.

Ussery testified that as early as May or June of 1986, Vincent's was having financial problems. At that time a meeting was held in which Wetzel, Tromatore and Ussery attended. They discussed Tromatore's excessive salary in addition to F.I.C.A., sales and state taxes and outstanding bills. Ussery recounted that Wetzel was at the business on an average of two to three days per week and that the two discussed financial affairs on many of those occasions. Ussery testified that Wetzel knew the taxes were not paid in August, 1986. Wetzel denies knowing of the

1. On July 22, 1991, the United States obtained an agreed judgment against Ray A. Tromatore in the amount of $13,929.34 for unpaid taxes pursuant to § 6672.

delinquency in August, but admits learning that the taxes were not paid in January, 1987. It was in January 1987, that the financial statements were finally prepared in connection with the sale of the business. Finally, Ussery insists that Wetzel directed him to pay the back taxes and other delinquent bills, which Wetzel denies. Ussery recalled telling Wetzel that the corporation had no money to pay the outstanding bills and taxes.

At the suggestion of Wetzel, the accounting firm of Alexander & Van Loon was retained for general accounting purposes. Of course, this included the preparation of corporate tax returns. Rodney Van Loon, a certified public accountant with Alexander & Van Loon, stated that the firm prepared a financial statement for the sale of the corporation. The financial statement was delivered in January 1987, and it indicated a delinquency in the mandatory withholding taxes. Van Loon and Cynthia Dunnavant, an accountant with the firm, testified that all financial dealings were with Ussery. They further stated that Ussery was dilatory in the submission of records necessary for the preparation of the appropriate tax documents.

The Employer's Quarterly Federal Tax Return (Form 941) for the quarter ending March 31, 1986 shows a tax liability of $3,827.69 which was paid in full. However, the monies were apparently paid late as the document is marked received on August 25, 1986. The 941 for the quarter ending June 30, 1986 shows a liability for the first month of the quarter of $3,431.73, the second month of $3,636.56 and the third month of the respective quarter for $3,184.46. Deposits in the amount of $3,333.01 left a balance of $6,919.74 due and owing. The statement was signed on August 22, 1986, and received by the government some time in August of 1986. Taxes for the quarter ending September 30, 1986 totalled over $7,000. The corporation made no payments on these taxes. Taxes for the period ending December 31, 1986 totalled approximately $4,500 with no payments being recorded. Finally, the 941 for the period ending March 31, 1987 reveals total taxes in excess of $10,000. Once again, no pay-

ments were forwarded to the Internal Revenue Service. All 941's with the exception of the last one filed (i.e., 941 for the period ending March 31, 1987) were signed by Ussery.

The corporation's bank statement on February 1, 1987, indicated that Vincent's made deposits in excess of $15,000 for the statement period. Additionally, the statement of March 1, 1987, reveals that deposits in excess of $20,000 were made during that particular transaction period. In sum, there was sufficient money in the corporate bank account to pay the outstanding federal taxes.

When questioned as to why he did not write a check for the outstanding taxes in January, 1987, Wetzel replied that the checking account balance was not written down. Moreover, Wetzel admitted that he did not call the bank because Ussery was the secretary/treasurer. Wetzel stated that he had the ability but not the authority to write checks. This contention is disputed by the record. The record indicates that Wetzel had the authority to write checks. Indeed, he wrote three checks to various vendors, albeit as an accommodation to the corporation. Hence, he had the ability and authority to write checks on behalf of the corporation although such activity was entrusted to Ussery.

On various dates in 1986 and 1987, Federal Employer's Quarterly Federal Tax Returns were filed on behalf of the corporation regarding employment tax liability for all four quarters of 1986 and the first quarter of 1987. The trust fund portion of the tax liability which was not paid is as follows:

| Taxable Period | Trust Fund Taxes Which Were Not Paid |
|---|---|
| 1st Qtr. '86 | $2,125.38 |
| 2nd Qtr. '86 | 6,919.74 |
| 3rd Qtr. '86 | 4,884.22 |
| 4th Qtr. '86 | 2,914.14 |
| 1st Qtr. '87 | 6,865.27 |

*Conclusions of Law*

Sections 3102(a) and 3402(a) of the Internal Revenue Code of 1954 (IRC), codified at Title 26 of the United States Code, require an employer to deduct and withhold income

and social security taxes from the wages paid to its employees. Section 7501 of the IRC provides that the withheld taxes shall be held by the employer as a special trust fund for the benefit of the United States. These "trust fund taxes" are for the exclusive use of the United States and are not to be used to pay the employer's business expenses, including salaries, or for any purpose. *See* 26 U.S.C. §§ 3102(b), 3403 and 7501(a).

The employer is required to report the amount of withheld taxes on its payroll tax return (Form 941). See Treasury Regulations on Employment Taxes (Treas.Reg.) § 31.6011(a)–4(a)(1). A payroll tax return must be filed every calendar quarter and is due by the last day of the first month following the quarter. *See* Treas.Reg. § 31.6071(a)–1(a). When the total amount of the tax accumulated at the end of a quarter-monthly period (defined in Treas. Reg. § 31.6302(c)–1(a)(ii)(b) as "the first seven days of a calendar month, the 8th day through the 15th day of a calendar month, the 16th day through the 22nd day of a calendar month, or the portion of a calendar month following the 22nd day of such month") is $2,000 or more, the taxes are due within three days after the close of such quarter-monthly period. *See* Treas. Reg. § 31.6302(c)–1(a)(1)(ii)(b).

Once the federal income and social security taxes are withheld from the employees' wages, the United States is required to credit the amount withheld against the employees' individual tax liabilities, regardless or whether such taxes are actually paid to the United States and even though the credits may result in refunds to the employees. 26 U.S.C. 31(a); Treas.Reg. § 1.31–1(a); *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978); *Hartman v. United States*, 538 F.2d 1336, 1340 (8th Cir.1976).

Section 6672 of the IRC was enacted to protect the United States against such losses by providing the government with another mechanism by which it may collect the withheld taxes. In order to establish liability under § 6672, the government must prove that the person from whom recovery is sought was "under a *duty to perform the act* in respect of which the violation occurs." 26 U.S.C. § 6671(b) (emphasis added). The "act" specified therein, is defined in § 6672 as follows:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall ... be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a).

In essence, § 6672 establishes a two-part test for imposing liability on persons for failure to pay federal withholding taxes. The initial requirement, "to collect, truthfully account for, and pay over any tax imposed by this title ...," necessitates a finding that the individual is a "responsible person." *Slodov v. United States*, 436 U.S. 238, 245 n. 7, 98 S.Ct. 1778, 1784 n. 7, 56 L.Ed.2d 251 (1978). The Court uses that phrase without necessarily adopting any of the constructions placed upon it in that decision. Second, the "responsible person" must have "willfully" failed to pay the taxes in question. 26 U.S.C. § 6672(a). Both statutory requirements must be established in order to impose liability under § 6672. *McCarty v. United States*, 437 F.2d 961, 194 Ct.Cl. 42 (1971).

Section 6671(a) of the Code provides that the 100–percent penalty liability shall be assessed and collected in the same manner as taxes. A federal tax assessment is deemed correct unless and until the person against whom the assessment was made proves the contrary by a preponderance of the evidence. *See Psaty v. United States*, 442 F.2d 1154 (3rd Cir.1971); *Sinder v. United States*, 655 F.2d 729 (6th Cir.1981); *Sherman v. United States*, 490 F.Supp. 747 (E.D.Mich.1980); *Liddon v. United States*, 448 F.2d 509, 513–14 (5th Cir.1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972) (plaintiff seeking a refund of a partial payment of a § 6672 pen-

alty has the burden of proving that he was not a responsible person).

■ Therefore, the issue before the Court is whether: (1) Wetzel and Ussery were "responsible persons" at the relevant time; and (2) if Wetzel and Ussery were "responsible persons," whether they acted "willfully" in failing to pay the taxes in question. The determination of whether or not an individual is a "responsible person" is a fact question, *see Bauer v. United States*, 543 F.2d 142, 148, 211 Ct.Cl. 276 (1976), to be determined by this Court in the instant case. Moreover, the fact that there may be other persons who were responsible is no defense; there may be, and frequently are, more than one responsible person. *Sinder v. United States*, 655 F.2d 729 (6th Cir.1981); *Taubman v. United States*, 499 F.Supp. 1133, 1139 (E.D.Mich. 1978), *aff'd sub nom. United States v. Intercontinental Industries, Inc.*, 635 F.2d 1215 (6th Cir.1980).

The Court is mindful that § 6672 disputes are prevalent in the federal system as evidenced by the multitude of reported opinions. However, the majority of cases upon which the parties rely are, for the most part, inconsistent and/or fact specific making analysis nothing less than difficult. Simply put, this Court finds the cases cited by the parties to be less than clear in crystallizing a standard for imposing liability under § 6672.

In *In re Premo* [90–2 U.S.T.C. para. 50,-396], 116 B.R. 515 (Bankr.E.D.Mich.1990), the court conducted an exhaustive and articulate discussion of many noteworthy § 6672 decisions. As noted therein, there exists a subtle inconsistency among the courts that have considered the meaning of a "responsible person." The *Premo* court recognized two lines of cases: (1) those decisions that *appear* to hold individuals with unexercised authority to control corporate payments as responsible persons [2]; and (2) the majority, holding that authority must be coupled with responsibility.[3]

The Seventh Circuit in *Monday v. United States*, 421 F.2d 1210 (7th Cir.1970), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970), set forth a test for determining a responsible person under § 6672:

> Corporate office does not, per se, impose the duty to collect, account for and pay over the withheld taxes.... Liability attaches to those with power [4] and responsibility [5] within the corporate structure for seeing that taxes withheld from various sources are remitted to the Government. This duty is generally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds.

*Id.* at 1214 (citations omitted).

The principal case on which the defendant/third-party plaintiff relies (i.e., *Monday*) impliedly follows those cases holding that authority alone is not enough. A person in a position to exercise control is not necessarily an individual "with power and responsibility within the corporate structure." *See Id.; see also Wiggins v. United States*, 188 F.Supp. 374, 376 (E.D.Tenn. 1960) ("The statute is directed at the person charged with the duty of collecting and

---

**2.** In the *Premo* case, the IRS argued that individuals with unexercised authority to control corporate payments were necessarily responsible persons. The court examined the cases proffered in support of the government's contention, but ultimately concluded that the cases did not stand for their cited principles and/or could be distinguished. Many of those cases are the same opinions that the government relies on in this proceeding.

**3.** Put another way, "[i]n determining whether an individual in a responsible person, the proper analysis focuses on whether that person had and exercised authority as to what bills or credi-

tors should or should not be paid, and when." *Hutchinson v. United States*, 559 F.Supp. 890, 892 (N.D.Ohio 1982) (*quoting Feist v. United States*, 607 F.2d 954, 221 Ct.Cl. 531 (1979).

**4.** Power is roughly synonymous with "authority" which is defined in *Webster's Ninth New Collegiate Dictionary* (1985) (*Webster's*) as the "possession of control, authority or influence over others." *See Premo, supra*.

**5.** A person is "responsible" if he/she is "liable to be called to account as the primary cause, motive or agent." *See Webster's*, note 4, *supra*.

paying the taxes and not simply one who may have authority to do so.").

In addition to *Monday*, the defendant/third-party plaintiff directs the Court to numerous other cases in support of its position. *In Builders Finance Co., Inc. v. United States*, 352 F.Supp. 491 (E.D.Mich. 1970), the court held that the individual in question was liable under § 6672 "since he had and exercised control over all [corporate] disbursements ... and ... disbursed funds to creditors." *Id.* at 495.

In *Taubman v. United States*, 499 F.Supp. 1133 (E.D.Mich.1978), *aff'd sub nom. United States v. Intercontinental Industries, Inc.*, 635 F.2d 1215 (6th Cir. 1980), the court quoted with approval the above-referenced language in the *Monday* opinion. The *Taubman* court's test for responsibility is "a functional one, which focuses upon the degree of control and influence which the officer exercised over the financial affairs of the corporation and, more specifically, over the disbursement of funds and priority of payments to creditors." *Id.* at 1137.

" 'Realistically read, [§ 6671(b) ] encompasses all those individuals who are so connected with a corporation as to have the responsibility and authority to avoid the default which constitutes a violation of [§ 6672].' " *Bolding v. United States*, 565 F.2d 663, 671, 215 Ct.Cl. 148 (1977) (*quoting Scott v. United States*, 354 F.2d 292, 296, 173 Ct.Cl. 650 (1965). However, to be a responsible person one does not have to be in " 'exclusive control over all corporate affairs.' " *Id.*, (*quoting Burack v. United States*, 461 F.2d 1282, 1291, 198 Ct.Cl. 855 (1972). Liability is predicated on the existence of significant, rather than absolute, control of the corporation's finances. *See Monday, supra* at 1214–15; *Adams v. United States*, 504 F.2d 73, 75 (7th Cir. 1974), *cert. denied sub nom. Estate of Klein v. Commissioner*, 421 U.S. 991, 95 S.Ct. 1998, 44 L.Ed.2d 482 (1975); *Anderson v. United States*, 561 F.2d 162, 165 (8th Cir.1977); *Silberberg v. United States*, 524 F.Supp. 744, 747 (E.D.N.Y. 1981).

In addition to the foregoing authorities, the Court is compelled to discuss a number of noteworthy Fifth Circuit decisions. The Fifth Circuit in *Mazo v. United States*, 591 F.2d 1151 (5th Cir.1979), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979), had occasion to consider a § 6672 dispute. There the trial court found several parties who were simultaneously the officers, directors, and stockholders of a corporation, and its general manager, Moore, liable under § 6672. *Id.* at 1152. An individual named Lavoie was employed as controller and prepared corporate checks, but he had no authority to sign or countersign those checks. Two signatures were required for checks drawn on the corporate checking account which meant that signatures of Moore plus a director or of two directors were requisite. The corporation also had a payroll and salvage account on which only one signature was required for drawing a check. Moore was the usual signatory on that account. *Id.* at 1155. The officers asserted that Lavoie prepared all payroll checks and then presented them for signature. Even though Lavoie had no authority to sign or countersign checks, each officer assumed that Lavoie was paying the withheld taxes. *Id.*

In reviewing the lower court's grant of summary judgment, the Fifth Circuit accepted as true the following:

[W]e must credit that, except for Moore, the individuals assessed had no knowledge that before the October 6 meeting any taxes were in arrears and that Moore knew of the default in August, but was informed that Lavoie would take care of it. We assume also that, although the directors together had complete control over corporate affairs, they did not exercise their prerogatives, leaving management to Moore.

*Id.* at 1156.

The court held that the appellants (i.e., the officers, directors, and the general manager of the corporation) were responsible persons because each were in complete control of its affairs. *Id.* Of extreme significance, was the court's recognition that "responsibility is a matter of status, duty

and authority, not knowledge." *Id.; see also Pototzky* and *Premo, infra; Gustin v. United States,* 876 F.2d 485, 491 (5th Cir.1989); *Wood v. United States,* 808 F.2d 411, 415 (5th Cir.1987).

The Fifth Circuit "generally takes the broad view of who qualifies as a responsible person." *Wood v. United States,* 808 F.2d 411, 415 (5th Cir.1987) (*citing Commonwealth National Bank v. United States,* 665 F.2d 743, 751 (5th Cir.1982); *see also Turnbull v. United States,* 929 F.2d 173, 178 (5th Cir.1991); *Morgan v. United States,* No. CA3–88–0564–D, 1990 WL 39106 (N.D.Tex. January 25, 1990), *aff'd,* 937 F.2d 281 (5th Cir.1991).

For example, in *Liddon v. United States,* 448 F.2d 509 (5th Cir.1971), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972), the Court found a corporate director to be a responsible person within the meaning of the statute. The plaintiff and one other individual (secretary-treasurer) were the only persons at the home office with authority to sign checks or make withdrawals for the corporate bank account. *Id.* at 512. In reaching their decision, the Court relied on what they characterized as a summary of responsible-person law:

> [T]he courts have tended to disregard the mechanical functions of the various officers, and, instead, have searched for the *person or persons who could have seen to it that the taxes were paid,* a person with ultimate authority over expenditures of corporate funds who can fairly be said to be responsible for the corporation's failure to pay over its taxes.

*Id.* at 512–13 (citing 22 A.L.R.3d 8, 50) (emphasis added).

In *Howard v. United States,* 711 F.2d 729 (5th Cir.1983), the appellate court affirmed the lower court's grant of summary judgment in favor of the United States on the issue of § 6672 liability. The Court considered the following factors:

> Howard was a director, minority shareholder, Treasurer and Executive Vice–President of Eden during the second and third quarters of 1978. He ran Eden's day-to-day operations. He was the sole signatory on the corporation's main

checking account for a substantial portion of that period, and shared check-signing authority with Rick Jameson for the remainder of the relevant period. During a prior quarter, it was he who directed that $8,000 in back taxes be paid the IRS.

*Id.* at 734. The court stated that "authority" refers to effective authority to pay the taxes. *Id; accord Morgan, supra* at *2 ("A person cannot be a responsible person unless he has the effective ability to pay the taxes.").

As precedential authority, the *Howard* court cites *Hornsby v. IRS,* 588 F.2d 952, 953 (5th Cir.1979) for the proposition that a corporate officer with check signing authority was a "responsible person." However, the status of the plaintiff in *Hornsby* was not an issue before the Fifth Circuit on appeal. The court expressly acknowledged that "Mr. Hornsby does not challenge the lower court's finding that, during the time in question, he was a responsible person." *Id.* at 953.

The Fifth Circuit recently enunciated several factors to be considered when determining who is a responsible person: (1) holding an office or owning stock in the corporation; (2) managing the day-to-day operations of the business; (3) making decisions as to disbursement of funds and payment of creditors; and (4) check-signing authority. *Turnbull v. United States,* 929 F.2d 173, 178 (5th Cir.1991). *See also In re Bernard,* 130 B.R. 740, 746 (Bankr.W.D.La. 1991).

In *Godfrey v. United States,* 748 F.2d 1568, 1575–76 (Fed.Cir.1984), the appellate court suggested several factors which may be considered in determining whether or not an individual is a "responsible person." These factors include:

> (1) did the person control the disbursement of payroll; (2) did the person control the voting stock of the corporation; (3) did he participate in the day-to-day management of the corporation; (4) did he determine which creditors would be paid and which would not; (5) did he come to the corporate office daily; (6) did he hire and fire the employees or have

the authority to do so; (7) did he draw a regular salary.

*Pototzky v. United States* [85–1 U.S.T.C. para. 9438] 8 Cl.Ct. 308 (1985) (*citing Godfrey,* 748 F.2d at 1575–76); *see also Braden v. United States,* 318 F.Supp. 1189, 1194 (S.D.Ohio 1970), *aff'd,* 442 F.2d 342 (6th Cir.), *cert. denied,* 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971) (court considered the following factors relevant to § 6672 responsibility: the duties of the individual according to the corporation's bylaws; the ability of the individual to sign corporate checks; the status of the individual as officer, director, or shareholder; the ability of the individual to control the financial affairs of the corporation; the authority of the individual to hire and fire employees; the stake of the individual in the success of the corporation; the identity of the individual paying the corporate creditors; and the identity of the signer of the corporate tax returns).

Assuming *arguendo* that the facts indicate Wetzel knew of Highball's failure to pay its tax obligations, such knowledge at least for *some courts* is irrelevant for purposes of "responsible person" analysis. *Pototzky v. United States* [85–1 U.S.T.C. para. 9438] 8 Cl.Ct. 308 (1985) (*citing 26 U.S.C. § 6671(b)* and *Godfrey v. United States,* 748 F.2d at 1576). "Plaintiff's knowledge of nonpayment is, at most, relevant to the issue of willfulness." *Id.,* (*citing Marlowe v. United States,* [83–2 U.S.T.C. para. 9435], 2 Cl.Ct. 711, 716 (1983)). *See also Mazo v. United States,* 591 F.2d 1151, 1156 (5th Cir.1979). On the question of knowledge vis-a-vis "responsible person" and "willfulness," the *Premo* decision is quite illustrative. The court held:

> [P]ower alone does not a responsible person make. We therefore conclude that an individual who had the authority, but not the obligation, to direct tax payments to the IRS is not a responsible person if he did not exercise such authority. [footnote 24].
>
> [footnote 24. It could be argued that, even if such an individual does not exercise his authority to control tax payments, he may nevertheless be liable un-

der § 6672 if his failure to act was "willful." *Cf. Neale v. United States* [64–1 USTC para. 9492], 13 A.F.T.R.2d 1721 (D.Kan.1964) ("The question is simply whether such person had knowledge that the taxes were not being paid by the corporation and had the final word as to what bills to pay or not to pay and when, and if he had such power or final word, and such knowledge, then he is a responsible person ...". This conclusion might be reconciled with the statutory requirement of a duty to make the tax payments by viewing the individual's authority, when coupled with the requisite level of knowledge relative to the delinquency, as giving rise to a duty to take affirmative steps to insure that the tax payments are made. *Cf. Schweitzer [v. United States],* 193 F.Supp. [309] at 311–312 [D.C.Neb.1961] ("[T]he plaintiff was put on notice by the filing of the federal tax liens that the corporation was not making timely remittance of [trust fund] taxes, and thereupon it became incumbent upon the plaintiff to exercise his duties as president and chief executive officer ... and actively participate ... to the extent necessary to cause the payment ... of [trust fund] taxes ..."). One problem with this argument is that it obscures the distinction between the "responsible person" and "willfulness" element, making knowledge of the delinquency relevant to both determinations. *Cf. Mazo,* 591 F.2d at 1156 ("[R]esponsibility is a matter of status, duty and authority, not knowledge."); *Pototzky v. United States* [85–1 USTC para. 9438], 56 A.F.T.R.2d 5157 [8 Cl.Ct. 308] (Ct.Cl. 1985) ("[K]nowledge is irrelevant in considering whether [plaintiff] was a 'responsible person' ... [citation omitted]. Plaintiff's knowledge of nonpayment is, at most, relevant to the issue of willfulness."). On the other hand, such an approach avoids the unjust result of permitting an individual in a position of power to escape liability by simply doing nothing.].

■ The Court is mindful that the availability of funds, if any, is irrelevant to the

determination of whether an individual is a responsible person. This Court's inquiry is limited to whether the person in question had the "status, duty and authority" to control the disbursal of corporate funds. *See Mazo v. United States*, 591 F.2d 1151 (5th Cir.1979). This Court's determination of the responsible person(s), if any, is guided in part by the *Turnbull* analysis.

■ Applying the *Turnbull* factors to the evidence adduced at trial, the Court finds that Wetzel was both an officer and stockholder of Highball. The undisputed evidence also reveals that Wetzel had check signing authority and in fact exercised that authority on three occasions, albeit as an accommodation to the corporation. *But see Gustin v. United States*, 876 F.2d 485, 492 (5th Cir.1989) (mere access to corporate funds does not make one a responsible person).

Resolution of the remaining *Turnbull* factors, however, is much more difficult. Ussery testified that Wetzel was at the business approximately two to three days per week during which time the two frequently discussed finances. However, management of the day-to-day operations was left in the hands of Ussery. Ussery would have this Court believe that Wetzel participated in the decision-making process relative to the disbursement of funds and payment of creditors. It bears emphasis that Ussery wrote the overwhelming majority of corporate checks from Highball's inception until its ultimate dissolution in 1987. It is also important to note that Wetzel admittedly knew of the delinquent taxes in early January 1987, but failed to rectify the situation because the corporate checking account balance was not written down. After examining this evidence, the Court is of the opinion that the second and third *Turnbull* factors have not been met. Consequently, the Court concludes that Wetzel was not a responsible person at any relevant time in 1986.

However, relying on those same facts and law, the Court finds that Wetzel's "status, duty and authority" changed shortly thereafter. More specifically, the Court is referring to Wetzel's duty as one of the two remaining officers in a corporation whose financial condition was rapidly deteriorating. In August 1986, Wetzel and Ussery obtained an $8,000 loan from Metropolitan Bank. Some time thereafter, Ussery and Wetzel agreed that the business should be sold. It was in January 1987, that the Alexander & Van Loon accounting firm prepared a financial statement in connection with the sale of the business. Wetzel concedes that the financial statement revealed a tax deficiency.

Therefore, it is the opinion of the Court that Wetzel became a responsible person on or about January 15, 1987, making him *potentially* liable for certain unpaid employment taxes. The Court uses the term *potentially* liable fully recognizing that the plaintiff would not be legally liable for any tax deficiency unless it subsequently found that Wetzel also met the "willfulness" test. The Court's conclusion is specifically limited to the facts of this case, as it has previously acknowledged that "knowledge" is irrelevant for purposes of determining responsible persons. For the Court to hold otherwise, would be to condone individuals such as Wetzel and Ussery abandoning corporate control without the fear of incurring § 6672 tax liability.

■ With respect to the United States' third-party claim against Ussery, the undisputed facts indicate that Ussery had and exercised the authority as to which bills or creditors were to be paid. Hence, the statute as construed by *Slodov*, leads to the unescapable conclusion that Ussery was a "responsible person" of Highball for all periods of time relevant to this lawsuit.

■ In addition, to incur liability under § 6672, the individual must have willfully failed to pay over the taxes withheld from the employees of the corporation. Willful does not mean that the responsible person acted by virtue of a "bad motive or the specific intent to defraud the Government or deprive it of revenue." *Sherman v. United States*, 490 F.Supp. 747, 754 (E.D.Mich.1980) (*citing Braden v. United States*, 318 F.Supp. 1189 (S.D.Ohio 1970), *aff'd*, 442 F.2d 342 (6th Cir.1971)). It merely means that the responsible person "had

knowledge of the tax delinquency and knowingly failed to rectify it, when there were available funds to pay the Government." *Builders Finance Co., Inc. v. United States*, 352 F.Supp. 491, 494 (E.D.Mich.1970); *Monday v. United States*, 421 F.2d 1210, 1216 (7th Cir.1970), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970).

"If the Appellant was aware of the fact that the taxes were unpaid, and, possessing the power and responsibility to pay them, failed to do so, then he is liable for the penalty of section 6672 notwithstanding his lack of malice or wrongful purpose." *Braden v. United States*, 442 F.2d at 344. "Willfulness ... may also indicate a reckless disregard for obvious or known risks." *Taubman v. United States*, 499 F.Supp. 1133, 1139 (E.D.Mich.1978), *aff'd sub nom. United States v. Intercontinental Industries, Inc.*, 635 F.2d 1215 (6th Cir.1980) (*quoting Monday*, 421 F.2d at 1215). *See also Kizzier v. United States*, 598 F.2d 1128, 1132 (8th Cir.1979) ("A responsible person acts willfully within the meaning of section 6672 if he acts in such a manner that he knows or intends that, as a consequence of his conduct, withheld employment taxes belonging to the government will not be paid over but will be used for other purposes."); *Hornsby v. Internal Revenue Service*, 588 F.2d 952, 953 (5th Cir.1979) ("Willfulness is shown if the responsible person knows or is aware that the money owing to the government for unpaid withholding taxes is used for other purposes"); *Newsome v. United States*, 431 F.2d 742, 745 (5th Cir.1970) (" '[W]illfulness' is established by the knowing preference of other corporate creditors over the United States *after* the due date....").

■ Liability under § 6672 can be predicated upon the use of the withheld funds for corporate purposes other than the payment of employment taxes even before the date the taxes are due. In *Newsome*, the court held:

The responsible officer's actions before the due date for payment of the withheld taxes satisfies the "willfulness" requirement under section 6672: when the responsible officer ... knows that the withheld funds are being used for other corporate purposes, regardless of his expectation that sufficient funds will be on hand on the due date for payment over to the government. Of course, the officer is only liable under section 6672 if the corporation does not pay over the withheld taxes at the date prescribed in the regulations. However, he subjects himself to liability under 6672 when he voluntarily and consciously "risks" the withheld taxes in the operation of the corporation, and subsequently the corporation is unable to remit the withheld taxes.

*Id.* at 746. *See also Hartman v. United States*, 538 F.2d 1336, 1341 (8th Cir.1976) (a subjective belief that funds will be available from another source when payment is due does not mitigate liability if nonpayment has been risked in the meantime by use of available funds to prefer other creditors over the United States). Similarly, "[t]he desire to continue in business is not justification for violating the trust imposed by law to pay taxes." *United States v. Hill*, 368 F.2d 617, 621 (5th Cir.1966)

■ Even the payment of salaries and wages constitutes willful conduct if the wages and salaries were paid at a time when the corporation was delinquent in paying over withheld taxes. *Thurner v. United States*, 260 F.Supp. 292 (E.D.Wis. 1966). As noted in *Sorenson v. United States*, 521 F.2d 325 (9th Cir.1975):

[T]he payment of net wages in circumstances where there are no available funds in excess of net wages from which to make withholding is a willful failure to collect and pay over under § 6672.

We reach this conclusion because under such circumstances there exists an intentional act to prefer creditors holding wage claims over tax claims held by the United States. It is clear that a "voluntary, conscious, and intentional act to prefer other creditors over the United States" constitutes a willful failure to pay over. Employees to whom wages are owed are but a particular type of creditor. There is no basis in law for preferring the wage obligation to them

over the withholding obligation to the Government. One who has voluntarily disabled himself from meeting this tax obligation by using all funds for wages has engaged in a "willful" act.

*Id.* at 328 (citation and footnote omitted).

As indicated above, Ussery was fully aware of the employment tax delinquency of Highball from its very inception. After all, Ussery was initially the secretary/treasurer of the corporation and later became its general manager. Furthermore, Ussery failed to rectify the tax delinquency after he admittedly knew the taxes were not paid. Additionally, as the general manager of Highball, no one was in a better position to know the financial condition of the corporation than was Ussery. Ussery knew or should have known that there were ample funds in the corporate bank account to pay the tax arrearage. Therefore, Ussery's failure to make the tax payments, as required by the IRC, was "willful" as defined above.

Wetzel's failure to pay specific unpaid employment taxes is no less "willful." Wetzel admittedly knew of the tax arrearage in January 1987, at which time he should have investigated the financial status of the corporation. If he had investigated, he would have learned that there were sufficient funds to pay the taxes for which he is now liable. Wetzel would have this Court believe that he was not obligated to call the bank in order to ascertain the corporation's financial status, because (1) the checking account balance was not written down; and (2) that such activity was generally left to the secretary/treasurer, Ussery. Plaintiff's contention is without merit because, as was found earlier, Wetzel was a "responsible person" in January 1987. Simply stated, Wetzel acted with a "reckless disregard of a known or obvious risk that trust funds may not be remitted to the government." *Brown v. United States,* 591 F.2d 1136, 1140 (5th Cir.1979).

The Court's earlier finding that Wetzel assumed responsible person status on January 15, 1987, now becomes important for two reasons: (1) Wetzel is liable for the unpaid taxes in the last quarter of 1986;[6] and (2) he is also liable for the delinquent taxes in 1987.

In summary, this Court concludes that Wetzel was not a responsible person during 1986. However, the Court finds that Wetzel became a responsible person of Highball on January 15, 1987. Therefore, he was required to collect, account for, and pay over any tax imposed by the IRC, relative to the foregoing date. More specifically, Wetzel was responsible for the collection and/or payment of Highball's unpaid employment taxes for the last quarter of 1986 and the first quarter of 1987. *See Brown, supra* at note 6. Moreover, his failure to pay those taxes was willful as defined herein.

The Court further finds that the United States is entitled to a judgment against Ussery on its third-party claim. The Court hereby directs the parties to confer and hopefully agree on the amount the plaintiff is entitled to recover against the Government. If the parties cannot agree on the proper amount, an application to the Court to fix the correct sum will be entertained.

Counsel for the defendant/third-party plaintiff shall submit a Judgment in conformity with and incorporating by reference the foregoing Bench Opinion within ten (10) days of the date of entry hereof.

---

6. Because Wetzel became a responsible person prior to the time that the 1986 last-quarter taxes were due to be paid (i.e., January 31, 1987), it was his duty as a responsible person to pay over such taxes. *See Brown v. United States,* 591 F.2d 1136, 1140 (5th Cir.1979) (that plaintiff was not a responsible person at the time a portion of the tax liability accrued does not relieve him from the responsibility for paying over the tax when it becomes due).