Gerald E. KAMINS, Appellant,

v.

Lloyd SPYRES, Appellee.

No. 47499.

Court of Appeals of Oklahoma,
Division No. 1.

July 22, 1975.

Released for Publication by Order of Court
of Appeals Sept. 18, 1975.

Gerald E. Kamins, pro se.

John P. Scott, Robert W. Raynolds,
Tulsa, for appellee.

ROMANG, Presiding Judge:

This is a suit for contribution of one-half of the delinquent payroll taxes and penalties paid by the plaintiff to the Internal Revenue Service.

Plaintiff, Gerald E. Kamins, is an attorney at law. In 1966, he was requested by the defendant, Lloyd Spyres, to form a corporation, which was to own and manage several restaurants. For his services in forming the corporation, which became the Spyres Shearn Corporation, plaintiff received 25% of the corporate stock. The corporation owned and managed the Casa Montez Restaurant in Tulsa, Oklahoma.

On May 17, 1967, the Board of Directors held its annual meeting at which the minutes show that Spyres was elected president of the corporation; Kamins was elected vice-president and secretary; and John P. Corr was elected treasurer. Upon

motion of Kamins, seconded by Corr, it was unanimously resolved as follows:

" . . . [T]hat Mr. Lloyd Spyres continue temporarily as manager of Casa Monte Restaurant, until such time as a Manager-Chef and other necessary pernel may be employed."

At a special meeting of the directors on May 25, 1967, it was resolved that the proper officers of the corporation obtain a loan of $15,000.00 from the Utica Square National Bank. The evidence shows that such loan was obtained and also an additional $5,000.00 loan.

In November of 1967 the Board of Directors agreed that the restaurant should cease doing business, and that the corporation should be declared defunct.

In late 1969 the Internal Revenue Service contacted Kamins in regard to a tax assessment against the corporation for the year 1967. Kamins paid the assessment for the last three quarters of 1967. He later brought this action asking contribution from Spyres for one-half of said assessment. This suit is based on the theory that Spyres was a "responsible officer" of the corporation.

The case was tried before a jury and resulted in a verdict and judgment for the defendant. Plaintiff has appealed and asserts as follows:

" . . . [T]hat the Court committed error when instructing the jury on giving them instruction number three (3) which is violative of the laws of Oklahoma dealing with contribution and further that the Court erred in giving instruction number four (4) in that it is not the proper definition of 'responsible officer' or person as defined by the laws of the State of Oklahoma."

Instruction No. 3 reads as follows:

"You are instructed that the defendant Lloyd Spyres is liable for the assessed taxes of the corporation unless you find, by a preponderance of the evidence that for a period of time, to be determined by you, that he was effectively excluded from exercising control over the affairs of the corporation."

It appears that if anyone was entitled to complain of Instruction No. 3, it was the defendant, for it places upon him absolute liability unless he proves that for the period of unpaid taxes, "he was effectively excluded from exercising control over the affairs of the corporation."

As to how Instruction No. 3 can be construed as being violative of the laws of Oklahoma dealing with contribution, has not been made clear to this court.

The corporation treasurer, John P. Corr, testified in pertinent part as follows:

"Q  Now then sir, do you know what happened to the $15,000.00 that was received by the corporation pursuant to that loan?

A  I have to call on my memory solely. I can't recall exactly where it all went. There were certain liabilities, I think rent and Mr. Kamins had covered a couple of electrical bills and he was paid two checks and was also paid for attorney fees and then Schusterman got a couple thousand dollars, the people who owned the building.

Q  Who supervised or who directed you to pay these accounts or these accounts payable when you got that money?

A  Mr. Kamins.

Q  He told you who to pay?

A  Yes.

Q  What, if anything, did he tell you about paying those taxes?

A  They were left in abeyance, they were put aside and other things were reckoned to be more pressing at the time.

Q  What, if any, instructions did Mr. Spyres give you about paying any of those accounts payable?

A  None.

\*   \*   \*   \*   \*   \*

Q Do you recall how much was reimbursed to Mr. Kamins out of the $15,000?

A I think there were three different times checks were made out, all in the vicinity of about $1,000.

\*   \*   \*   \*   \*   \*

Q Now, then, sir, after you became an officer and a director of the corporation, did Mr. Spyres, did he maintain any managerial function in the corporation?

A Not as far as the financial end was concerned, no.

Q And who were your dealings with?

A Mr. Kamins.

Q Now, at the board of directors meetings, sir, who appeared to be the managing director or the director who gave the instructions as to how to run the corporation?

A Jerry Kamins was the principal operator of the corporation subsequent to my going into it.

Q Now, isn't it true, sir, that Mr. Spyres was removed as manager of the corporation?

A Yes, he had an operation out here at the airport and it was suggested at one of the meetings that he stay there.

Q Did he do so?

A I think so.

\*   \*   \*   \*   \*   \*

Q But the funds that were available were deposited by the manager?

A Yes.

Q And what was that manager's name?

A Well, there were two, Bill McElroy was one and Tiny Wade.

Q Did you know Bill McElroy, sir?

A I know him, he was chef at Tradewinds. I knew him by sight.

Q Do you know how he happened to be hired as manager?

A I think he was contacted by Mr. Kamins.

Q At whose direction did he serve under, sir?

A Well—

Q Who directed his duties?

A I would say that the operating duties were carried on by Jerry, and I was down there often and he would be working directly under Jerry and I.

Q Did you ever see Mr. Spyres ever give him directions or instructions of any kind?

A No.

Q Now, at the directors meeting, did Mr. Spyres take an active part, forming the policy of the corporation?

A I would say that he entered into the discussions in any he attended, but the policies were formulated jointly more at the prompting of Mr. Kamins, I would say."

In *Monday v. United States,* 421 F.2d 1210 (7th Cir. 1970), the court said:

"Corporate office does not, *per se,* impose the duty to collect, account for and pay over the withheld taxes. On the other hand, an officer may have such a duty even though he is not the disbursing officer.

\*   \*   \*   \*   \*   \*

" . . . Liability attaches to those with power and responsibility within the corporate structure for seeing that the taxes withheld from various sources are remitted to the Government. . . . This duty is generally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds."

In the instant case the evidence shows conclusively that during the latter part of the second quarter in 1967, and during all of the third and fourth quarters of that

year, Kamins exercised control over the financial affairs of the Casa Montez Restaurant, and Spyres was running another eating place at the airport. Kamins had both the power and responsibility for payment of the payroll taxes of the Casa Montez Restaurant. As regards Kamins, we find nothing in Instruction No. 3, that was prejudicial to him.

■ Kamins next complains of Instruction No. 4, which reads:

"You are instructed that a corporation can act only through its officers, directors and employees, and that every corporate employer must have a responsible officer, and that there can be more than one responsible officer, and in such a case the liability is joint and several.

"In this respect, you are further instructed that the term 'responsible officer or person' includes any person who was connected or associated with the corporate employer in such a manner that he has the power to see that the taxes are paid or that corporate obligations are met.

"In this connection, you are further instructed that if, by a preponderance of the evidence, that the defendant was connected or associated with the corporation in such a manner that he retained the power to see that the taxes were paid then you are to find for the plaintiff not to exceed $1,374.87."

Kamins asserts as follows:

"Instruction number four (4) is in error in that it tends to leave the jury with the impression that a responsible officer must be vested with the sole power to see that the taxes are paid."

We note in this regard that the instruction states "that there can be more than one responsible officer, and in such case the liability is joint and several." It also states that if "the defendant was connected or associated with the corporation in such manner that he retained the power to see

that the taxes were paid then you are to find for the plaintiff not to exceed $1,374.-87."

The instruction does not state nor intimate "that a responsible officer must be vested with the sole power to see that the taxes are paid." We find no reversible error in Instruction No. 4.

26 U.S.C. § 6672 provides:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable."

In *Stake v. United States,* D.C.Minn., 347 F.Supp. 823 (1972), the court said:

"The two elements necessary to make § 6672 applicable to a taxpayer are: (1) the individual person had the authority to direct or control the payment of corporate funds and (2) such a responsible person willfully failed to comply with the tax withholding statutes.

"When an employer is a corporation, liability under § 6672 is limited to those who exercise the corporation's power to determine whether or not to pay over the withheld taxes.

\*    \*    \*    \*    \*    \*

"The term 'willfully' as used in § 6672 is not the same as when used in the sections imposing a criminal liability. . . . Instead it means, 'a deliberate choice voluntarily, consciously and intentionally made to pay other creditors instead of paying the Government.' "

In *Burden v. United States,* 486 F.2d 302 (10th Cir. 1973), the word "willfully" as

used in § 6672, is further defined as follows:

" 'Willfully' as used in Section 6672, supra, means a voluntary, conscious and intentional decision to prefer other creditors over the Government."

In the instant case, Kamins was fully aware of the financial difficulties of the Casa Montez Restaurant and its defaulted tax obligations, but he chose to pay creditors other than the government. As a matter of law, he is not entitled to any contribution on said taxes and penalties from Spyres.

Affirmed.

REYNOLDS and BOX, JJ., concur.