T.C. Memo. 2009-123


UNITED STATES TAX COURT


TGI ENTERPRISES, INC., AN OKLAHOMA CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19157-07L.          Filed June 1, 2009.


        P failed to pay its self-reported Federal payroll
taxes for various quarters in 2002-04, and R issued a
notice of intent to levy.  P requested a hearing under
I.R.C. sec. 6330, indicating a desire for a partial
payment installment agreement.  R's Office of Appeals
requested that P provide financial information and
agree to certain prepayment requirements.  P did not
provide all of the requested financial information and
would not agree to R's prepayment requirements.  R's
Office of Appeals issued to P a notice of determination
in which it determined that a levy was appropriate.  P
appealed that determination to this Court.

        <u>Held</u>:  R's Office of Appeals did not abuse its
discretion in denying P's proposal for a partial
payment installment agreement when P did not provide to
Appeals the financial information requested.

Paul H. Burgess, for petitioner.

William F. Castor, for respondent.


MEMORANDUM OPINION


GUSTAFSON, Judge:  This case is an appeal by petitioner TGI Enterprises, Inc., an Oklahoma corporation (TGI), under section 6330(d).[1]  TGI seeks our review of the determination by the Internal Revenue Service (IRS) to uphold a proposed levy on TGI's assets.  The levy is intended to collect payroll taxes for the quarters ending 06/2002, 09/2002, 12/2002, 03/2003, 12/2003, 03/2004, 06/2004, 09/2004, and 12/2004.  This case was submitted fully stipulated pursuant to Rule 122, reflecting the parties' agreement that the relevant facts could be presented without a trial.  The parties' stipulation of October 21, 2008, and the attached exhibits are incorporated herein by this reference.

## Background

At the time TGI filed its petition, it was an Oklahoma corporation operating in Oklahoma.

### TGI's Nonpayment of Self-Reported Payroll Taxes

TGI filed its Forms 941, Employer's Quarterly Federal Tax Return, for the second, third, and fourth quarters of 2002, the

---

[1]Except as otherwise noted, all section references are to the Internal Revenue Code (26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

first and fourth quarters of 2003, and all four quarters of 2004, and the IRS assessed the tax shown on the returns as follows:

| Period | Assessment Date | Tax |
|--------|-----------------|-----|
| 6/2002 | 12/15/2003 | $32,627.74 |
| 9/2002 | 12/15/2003 | 28,102.68 |
| 12/2002 | 12/29/2003 | 29,887.49 |
| 3/2003 | 12/1/2003 | 32,657.93 |
| 12/2003 | 1/3/2005 | 32,108.38 |
| 3/2004 | 1/3/2005 | 29,538.19 |
| 6/2004 | 2/28/2005 | 36,971.11 |
| 9/2004 | 2/7/2005 | 34,336.29 |
| 12/2004 | 4/4/2005 | 45,244.00 |

However, TGI failed to pay all of the tax liabilities reported on each of the returns.[2]  On the same dates that the IRS assessed the taxes against TGI, it also assessed penalties and interest for each period shown above and issued to TGI a Form CP 504, Notice of Balance Due, for each period.  TGI did not pay the amounts due.

---

[2]While the parties' stipulation of fact indicates that TGI "failed to pay all of the liabilities reported on each of the returns", a review of TGI's transcript in the record indicates that TGI did not pay any of the tax liabilities reported on any of the returns listed above, except that it made slightly over half of the payments due for the last quarter of 2004.

Trust Fund Taxes and Penalties

The unpaid payroll taxes were a combination of TGI's portion of FICA tax,[3] its employees' portion of FICA tax that TGI withheld from its employees' wages and did not pay over, and income tax that TGI withheld from its employees' wages and did not pay over.  That is, in addition to being required to deposit TGI's own portion of FICA tax with the IRS, TGI was also required to remit to the IRS its employees' portion of FICA and income tax that TGI had withheld from its employees' wages, see secs. 3102(b), 3403, but TGI did not do so.  The FICA tax and income tax that are withheld from employees' wages are held in trust for the United States, see sec. 7501(a), and are known as trust fund taxes.

At the time these trust fund taxes were withheld from each employee's wages but not remitted to the IRS, the management of TGI included Julie A. Sawyer, Tracy C. Copeland, Charles (Michael) Copeland, and Barbara S. Cross.[4]  Since the foregoing

---

[3]Federal Insurance Contributions Act or FICA tax is a payroll tax imposed on both employers and employees, secs. 3101, 3111, to fund Social Security and Medicare.

[4]Julie A. Sawyer was a longtime employee of TGI who was the bookkeeper in charge of preparing TGI's employment tax returns and remitting the tax due.  Tracy C. Copeland was the president of TGI from January 1991 until December 2001, the CEO from January 2002 until sometime after December 2004, and one of its owners, who had the authority to sign TGI's tax returns and payroll checks, as well as to obligate TGI.  Michael Copeland was the secretary-treasurer of TGI and one of its owners.  Barbara S.
(continued...)

individuals were part of the management of TGI and were possibly responsible for the remittance of the unremitted trust fund taxes, the IRS, on May 27, 2005, issued a Form 4183, Recommendation re: Trust Fund Recovery Penalty Assessment, proposing to assess personally against each individual listed above a liability of $239,433.38 under section 6672 to recover the trust fund taxes they had failed to remit.

## $70,000 Loan From Trust

In October 2006 TGI borrowed $70,000 from a trust belonging to the parents of Michael Copeland, one of the corporate officers, to finance TGI's purchase of supplies to fulfill a large order. The short-term loan was secured by the purchase order, the materials, the finished goods, and the receivable created upon shipment. TGI repaid the loan immediately upon payment by its customer. There was no formal agreement with respect to this loan. When TGI repaid the loan to the trust, it repaid $72,000--i.e., $70,000 plus interest of 48 percent per annum.

## TGI's Negotiations With Collections

As early as December 2006, TGI began working with the IRS's Revenue Officer Hal Spannagel to try to resolve TGI's outstanding

---

[4](...continued)
Cross was the president of TGI from January 2002 through October 2004. Ms. Cross was in charge of the day-to-day operations of TGI and managing the employees. Ms. Cross also had check-signing authority.

tax liability.  TGI proposed a partial payment installment agreement whereby TGI would pay $1,000 per month, with the payment increasing to $1,650 per month in September 2007.  TGI alleges that the revenue officer orally agreed to a $1,606-per-month payment if certain conditions were met; i.e., the revenue officer wanted to confirm some facts regarding the $70,000 loan that TGI had repaid in October 2006.  In a letter dated April 25, 2007, from the revenue officer to TGI's counsel, the revenue officer stated that he needed proof that "the money originally came from the trust, the trust was established by Mr. Copeland's father and that the funds in the trust did not originate from TGI Enterprises Inc or any of its officers."  Presumably, the revenue officer wanted to confirm that the $70,000 was a repayment of a legitimate arm's-length loan and not a diversion of funds by TGI.  However, TGI did not provide the revenue officer with the information he requested; and because the trust refused to allow the IRS to inspect its books, the revenue officer denied TGI's installment proposal.

Commencement of CDP Proceedings

As a result of the failed attempt to settle TGI's tax liability, on December 8, 2006, the IRS issued to TGI a Final Notice of Intent to Levy and Notice of Your Right to a Hearing. TGI timely requested a collection due process (CDP) hearing by submitting to the IRS on January 8, 2007, a Form 12153, Request

for a Collection Due Process or Equivalent Hearing.  Attached to the Form 12153 was a letter from TGI's counsel, Paul H. Burgess, which stated:

> TGI and its officers are beginning the process of filing offers in compromise.  The company is filing based on doubt as to collectibility and perhaps effective tax administration.  The officers will be filing based on the preceding and doubt as to liability.

IRS Requests for Financial Information

On May 16, 2007, the IRS's Office of Appeals sent a letter to TGI acknowledging that Appeals had received TGI's request for a CDP hearing.  Then, by letter dated June 5, 2007, the IRS's Settlement Officer Greg Clark scheduled TGI's telephone CDP hearing for June 26, 2007.  In that June 5 letter, the settlement officer advised TGI that in order for the Office of Appeals "to consider alternative collection methods such as an installment agreement or offer in compromise, you must provide any items listed below."  The only item listed was:

- A completed Collection Information Statement Form 433-A for all corporate owners and Form 433-B for businesses with all line items of section 7 completed.

The settlement officer asked for the requested information to be submitted within 14 days and stated, "I cannot consider collection alternatives at your conference **without this information**."

On June 12 and July 12, 2007, telephone conferences were held, and on July 10, 2007, a face-to-face meeting was held

between the settlement officer and TGI's counsel. During the course of these conferences, TGI's counsel requested a partial payment installment agreement. The settlement officer advised TGI and its counsel that the requested Form 433-B, Collection Information Statement for Businesses, and Forms 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, had not been provided, and that a failure to provide the requested financial information was a basis for rejection of the partial payment installment agreement. TGI's counsel agreed to supply this information by July 13, 2007.

However, TGI never provided this required information to the settlement officer. Nonetheless, the settlement officer was able to obtain a partially completed Form 433-B that was in the collection file because it had been submitted to the revenue officer 4 months earlier, on or around March 12, 2007. TGI points out that its Form 433-B amounted to 99 pages and was accompanied by "over 100 bank statements." However, section 7 of the Form 433-B was not sufficiently completed to allow the settlement officer to determine TGI's monthly income and expenses. Instead of completing each line item in section 7, TGI had inserted "$0.00" for total income and "$0.00" for total expenses and had inserted "SEE page 4 of balance sheet" in the Section 7 area asking for a specific breakdown of monthly business income and expenses. Attached to the March 2007 Form

433-B was a variety of documents, such as an accounts receivable report, a depreciation schedule, and bank records, but nothing listing TGI's monthly income and expenses.[5] The settlement officer had particularly requested this missing information in his June 5 letter, but TGI never provided it.

Prepayment Requirements

During the CDP hearing the settlement officer further advised TGI's counsel that, in accordance with Internal Revenue Manual (IRM) guidelines, TGI would be required to meet two prepayment requirements before a partial payment installment agreement would be approved. First, the settlement officer informed TGI that it would be expected to obtain another $70,000 loan from the trust belonging to Michael Copeland's parents. Because TGI had recently, i.e., on or about October 31, 2006, repaid its $70,000 loan to that trust, the settlement officer inferred that the trust might be willing to lend to TGI. Second, after reviewing the TGI Form 433-B that was in the collection file, the settlement officer also required TGI to contribute $20,000 of equity it had in a 2002 GMC Yukon XL Denali sports utility vehicle. The settlement officer concluded that TGI's

---

[5]TGI did refer to "page 4 of the balance sheet", but this was an apparent reference to its Schedule L on page 4 of its 2006 Form 1120S, U.S. Income Tax Return for an S Corporation, which was attached to the Form 433-B. We do not find the annual information contained therein for the year ending December 31, 2006, to be helpful in determining with any precision TGI's monthly income and expenses as of July 2007.

prepayments of these amounts--totaling $90,000--would decrease the risk to the Government that TGI would continue to accrue additional unpaid employment tax liabilities.  The settlement officer also concluded that because of TGI's failure to provide income and expense information on its Form 433-B, TGI's ability to pay its operating expenses and current taxes could not be verified.  Therefore, the settlement officer concluded that TGI was currently unable to pay its operating expenses and current taxes.[6]

As a result, on July 27, 2007, the Office of Appeals issued to TGI a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, which sustained the proposed levy to collect TGI's unpaid payroll taxes.  The attachment to the Notice of Determination stated that "[t]he request for a Partial Payment Installment Agreement is denied based on * * * [TGI's] failure to submit completed financial information, and * * * [TGI's] failure to agree to the prepayment required by the Settlement Officer."

On August 24, 2007, TGI timely petitioned this Court to review the notice of determination issued on July 27, 2007.  The

_____

[6]The settlement officer's conclusion that TGI was unable to pay its current operating expenses and taxes was further bolstered by the fact that TGI had recently borrowed the $70,000 from the trust to cover its operating expenses, i.e., to purchase raw materials and pay for the necessary labor to complete an order for a customer.

petition alleges four points of error in that determination, only two of which need to be resolved to dispose of this case:[7]

(1)   That "the Office of Appeals abused its discretion in not approving an installment agreement as provided for by Code Sec. 6195(a) [sic]"; and

(2)   That the "Appeals Office also abused its discretion by demanding certain Petitioner's individual shareholder to file * * * a Form 433-A, when such shareholder is not a responsible or willful person."

TGI then asked the Court to order "Respondent to enter into an installment agreement for $1,606 per month pursuant to I.R.C. Sec. 6159(a)."[8]

The parties jointly moved to submit the case under Rule 122, and the case is now before the Court for decision without trial.

---

[7]TGI also cites as error (1) that "the Appeals Office abused its discretion [in requiring $90,000 in prepayments] because Petitioner has no authority to force the Trust to pay it $70,000, the truck was not worth $20,000, and Petitioner cannot borrow $20,000 against it and still make a $2,700 per month payment", and (2) that the "Appeals Office abused its discretion by concluding [TGI] was unable to pay its operating expenses and current taxes".  Because we find that TGI's failure to provide the requested financial information justified the settlement officer's rejection of TGI's partial payment installment agreement proposal, we need not decide whether the settlement officer abused his discretion in the other respects that TGI alleges.

[8]This is the same $1,606 monthly payment amount that TGI alleges was orally agreed to by the revenue officer during the IRS's pre-CDP collection review.

## Discussion

I.   Applicable Legal Principles

A.   Collection Review Procedure

When a taxpayer fails to pay any Federal tax liability within 10 days of notice and demand, the IRS may collect the unpaid tax by levy on the taxpayer's property, pursuant to section 6331.  However, before the IRS may proceed with that levy, the taxpayer is entitled to administrative and judicial review pursuant to section 6330.  Administrative review is carried out by way of a hearing before the Office of Appeals under section 6330(b) and (c); and if the taxpayer is dissatisfied with the outcome there, it can appeal that determination to the Tax Court under section 6330(d), as TGI has done.

The pertinent procedures for the agency-level CDP hearing are set forth in section 6330(c).  First, the appeals officer must obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1).[9]  Second, the taxpayer may "raise at the hearing

_____

[9]In the case of a levy to collect a self-reported tax liability, the basic requirements (see sec. 6331(a), (d)) for which the appeals officer obtains verification are:  the IRS's timely assessment of the liability (secs. 6201(a)(1), 6501(a)); the giving to the taxpayer of notice and demand for payment of the liability (sec. 6303); and the giving to the taxpayer of notice of intention to levy and of the taxpayer's right to a hearing (secs. 6330(a), 6331(d)).  A review of TGI's IRS

(continued...)

any relevant issue relating to the unpaid tax or the proposed levy," including challenges to the appropriateness of the collection action and offers of collection alternatives. Sec. 6330(c)(2)(A). Additionally, the taxpayer may contest the existence and amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have an opportunity to dispute the tax liability.[10] Sec. 6330(c)(2)(B).

TGI's contentions pertain to the second of those sets of issues--i.e., "relevant issue[s] relating to * * * the proposed levy" under section 6330(c)(2)(A).

B.   Standard of Review

When the underlying tax liability is not at issue, we review the determination of the Office of Appeals for abuse of discretion. Goza v. Commissioner, 114 T.C. 176 (2000). TGI has not challenged its underlying liability. Accordingly, we review the IRS's determination for abuse of discretion; that is, whether the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301,

---

[9](...continued)
transcript in the hearing record shows that the above requirements were met; and TGI does not dispute that the requirements of any applicable law or administrative procedure were met in compliance with section 6330(c)(1).

[10]TGI does not contest the underlying, self-reported liability. Therefore, the underlying liability is not at issue. See Goza v. Commissioner, 114 T.C. 176 (2000).

320 (2005), affd. 469 F.3d 27 (1st Cir. 2006); Sego v. Commissioner, 114 T.C. 604, 610 (2000).

II.   Whether the Appeals Officer Abused His Discretion in Rejecting TGI's Proposed Collection Alternative

The IRS determined to proceed with its levy against TGI, and did not accept the proposal for a partial payment installment agreement, because TGI failed to fulfill two prerequisites for consideration of such an alternative:  TGI failed to submit financial information sufficient to enable the IRS to evaluate its collection potential; and TGI failed to agree to the prepayment requirements determined by the settlement officer in accordance with the IRM.

A.    The Settlement Officer's Proper De Novo Review of TGI's Proposed Collection Alternative

TGI argues that the settlement officer abused his discretion because, rather than address the narrow grounds upon which the revenue officer had previously rejected TGI's installment proposal, i.e., that a former creditor of TGI (the trust) had refused to allow IRS inspection of its books, the settlement officer undertook a de novo review of the installment proposal and raised issues never considered by the revenue officer.  TGI's argument reflects a misunderstanding of the scope and purpose of a CDP hearing.  By filing a Form 12153 requesting a CDP hearing, TGI was not merely appealing the denial of the installment proposal by the revenue officer; instead, it was also appealing

the proposed collection action, i.e., a levy upon its assets to collect its unpaid payroll taxes.

Pursuant to section 6330(c)(3), a determination by the Office of Appeals must take into consideration any collection alternative proposed by the taxpayer. At the CDP hearing TGI's counsel proposed a partial payment installment agreement. In considering the viability of that collection alternative, the settlement officer properly considered all issues regarding TGI's eligibility for a partial payment installment agreement under section 6330(c)(3)--not just issues that the revenue officer may have considered in the past. During the course of a CDP hearing, the Office of Appeals conducts an independent review of a taxpayer's circumstances when considering a proposed collection alternative, and it is not limited to a revenue officer's previous review or findings. See Marks v. Commissioner, T.C. Memo. 2008-226; Lloyd v. Commissioner, T.C. Memo. 2008-15. Therefore, the settlement officer did not abuse his discretion when he considered all issues related to the proposed partial payment installment agreement, instead of limiting his review to the narrow grounds of the revenue officer's prior denial.

B.    <u>The Office of Appeals' Proper Denial of TGI's Proposed Collection Alternative When TGI Failed To Provide Requested Financial Information</u>

TGI's petition argues that "the Office of Appeals abused its discretion in not approving an installment agreement as provided for by Code Sec. 6195(a) [sic]".  We cannot agree.

1.    <u>TGI's Failure To Submit a Completed Form 433-B</u>

During a section 6330 hearing, "[t]axpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing."  Sec. 301.6330-1(e)(1), Proced. & Admin. Regs.  An appeals officer may not consider a collection alternative unless the taxpayer has provided adequate financial information, such as a current Form 433-A.  See Rev. Proc. 2003-71, sec. 4.03, 2003-2 C.B. 517, 518; see also IRM pt. 5.14.2.2.1(1), (5) (July 12, 2005), 5.14.7.4.1(5) (Sept. 30, 2004).  The settlement officer was following the IRS's administrative guidelines when he asked TGI to provide a completed financial statement (Form 433-B).  See IRM pt. 5.14.2.2.1(1), 5.14.7.4.1(5).  It was not an abuse of discretion for the settlement officer to reject TGI's proposed collection alternative when TGI failed to submit a Form 433-B with each line item in section 7 completed.  See <u>Prater v. Commissioner</u>, T.C. Memo. 2007-241; <u>Chandler v. Commissioner</u>, T.C. Memo. 2005-99; <u>Roman v. Commissioner</u>, T.C. Memo. 2004-20.  This

finding alone is sufficient to sustain the determination by the Office of Appeals to proceed with a levy against TGI's assets to recover its unpaid payroll taxes.  Nevertheless, we will also address the related contention that the settlement officer abused his discretion by requesting Forms 433-A from all of TGI's corporate owners.

### 2.   TGI's Failure To Submit Completed Forms 433-A

In its petition TGI contended that the "Appeals Office also abused its discretion by demanding a certain Petitioner's individual shareholder to file * * * a Form 433-A, when such shareholder is not a responsible or willful person."  TGI does not specifically allege which individual shareholder should have been excused from providing financial information.  However, in its response to the motion for summary judgment, TGI alleges that "[t]here are six shareholders of TGI.  Of the six shareholders, four are minority shareholders/employees * * * who have never been assessed the underlying tax * * * [and] do not participate in management of the company."  TGI then states that "[t]here are two shareholders who are potentially liable for part of the taxes * * * [i.e., Tracy C. Copeland and Barbara S. Cross, but] they have consistently denied liability for the trust fund penalty and have instituted litigation in the United States District Court for the Northern District of Oklahoma seeking relief from the

Government's wrongful assessment."[11]  However, TGI never

addresses Michael Copeland's responsibility, as the secretary-

treasurer of TGI and one of its owners, for TGI's trust fund

taxes, even though he was listed on the Form 4183 as a

responsible person.  It is reasonable to presume that a corporate

officer may be a responsible person under section 6672.  See

Bolding v. United States, 215 Ct. Cl. 148, 565 F.2d 663 (1977);

see also Kamins v. Spyres, 540 P.2d 1208, 1210 (Okla. Civ. App.

1975) (quoting Monday v. United States, 421 F.2d 1210, 1214-1215

(7th Cir. 1970)).  We find that at least Tracy C. Copeland,

Barbara S. Cross, and Michael Copeland, as corporate officers

charged with general control over the corporation, were all

corporate owners and officers who were possible responsible

persons for TGI's trust fund taxes.

The settlement officer was following administrative

guidelines when he requested financial information from TGI's

owners (Forms 433-A).  See IRM pt. 5.14.7.4.1.1(6)(C), (7) (July

6, 2005).  Before the Secretary grants an installment agreement

that will not fully pay all balances due before the expiration of

the collection period, i.e., a partial payment installment

---

[11]The fact that Tracy C. Copeland and Barbara S. Cross were
disputing their liability for section 6672 penalties in District
Court litigation confirms that the IRS assessed the penalty
against them as responsible persons and then defended that
position in litigation.  We cannot say that the settlement
officer abused his discretion by taking that position in his own
deliberations about TGI.

agreement, a Form 433-A is required from all potentially responsible persons to show the extent to which the potentially responsible persons have the ability to pay from current assets or income. Id. The trust fund recovery penalty (TFRP) under section 6672 is "an alternative means of collecting unpaid trust fund taxes when taxes are not fully collectible from the company/business that failed to pay the taxes." IRM pt. 8.25.1.1(2) (Oct. 19, 2007); see also Slodov v. United States, 436 U.S. 238 (1978). Therefore, before the IRS will excuse a business from paying part of its tax liability--by granting a partial payment installment agreement--the administrative guidelines direct the appeals officer to examine all other sources of collection, including collection from possible responsible persons.

The IRS had already assessed the TFRP against Tracy C. Copeland and Barbara S. Cross, so they were certainly possible responsible persons required to supply their financial information under the IRS's administrative guidelines. Michael Copeland, as an owner and an officer, was another possible responsible person who should have been asked to supply his financial information. As to the other owners, the record does not reveal the extent of their involvement with TGI, but in TGI's response to the motion for summary judgment, it indicated that "of the six shareholders, four are minority shareholders/

employees * * * [that] do not participate in the management of the company." Therefore, even though TGI characterized the other owners as not involved in the management of TGI, it admitted they were at least employees. This classification alone (i.e., as non-officer employees) is not sufficient to exclude them from being possible responsible persons. Instead, whether these employee-shareholders could be responsible for a TFRP would depend on their duties and responsibilities within the company, and that information is missing from the record. The assertion that a mere employee cannot be a responsible person is further contradicted by TGI's own contention that Julie Sawyer--who was an employee and not an officer--was the primary culprit in TGI's failure to pay its taxes. Since the settlement officer could not rule out the possibility that all of TGI's owners might have been responsible persons, it was not an abuse of discretion for him to request financial information in accordance with the IRM. See Orum v. Commissioner, 123 T.C. 1, 13 (2004), affd. 412 F.3d 819 (7th Cir. 2005); McClanahan v. Commissioner, T.C. Memo. 2008-161; Etkin v. Commissioner, T.C. Memo. 2005-245.

Furthermore, when the settlement officer requested the financial information from all of TGI's owners, TGI did not provide the information for some and explain why the others should be exempt. Instead, TGI simply failed to supply any information of any owner. It was not until the settlement

officer sustained the levy that TGI raised the complaint that the requests were overbroad.  Again, "Taxpayers will be expected to provide all relevant information requested by Appeals, including financial statements, for its consideration of the facts and issues involved in the hearing."  Sec. 301.6330-1(e)(1), Proced. & Admin. Regs.  An appeals officer may not consider a collection alternative unless the taxpayer has provided adequate financial information, such as a current Form 433-A.  See Rev. Proc. 2003-71, sec. 4.03; see also IRM pt. 5.14.2.2.1(1), (5); 5.14.7.4.1(8); 5.14.7.4.1.1(6)(C), (7).

Since the particular collection alternative that TGI proposed required the settlement officer to obtain financial information from all possible responsible persons for the trust fund taxes (see IRM pt. 5.14.7.4.1.1(6)(C), (7)), it was not an abuse of discretion for the settlement officer to reject TGI's proposed collection alternative when none of the possible responsible persons supplied any financial information.  See Prater v. Commissioner, T.C. Memo. 2007-241; Chandler v. Commissioner, T.C. Memo. 2005-99; Roman v. Commissioner, T.C. Memo. 2004-20.  This finding alone, as well, is sufficient to sustain the determination by the Office of Appeals to proceed with levy against TGI's assets to recover its unpaid payroll taxes.

We need not address whether the settlement officer's request for the $90,000 in prepayments and his finding that TGI could not pay its current operating expenses and taxes were appropriate. Rather, we are able to hold, on this record, that the Office of Appeals did not abuse its discretion in upholding the proposed levy to collect TGI's unpaid tax liabilities when TGI failed to provide to the settlement officer the financial information he requested.

To reflect the foregoing,

<u>An appropriate decision</u>

<u>will be entered</u>.